# ANDERSON COUNTY COMMISSIONERS *v.* BEAL.

## IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted January 9, 1885.—Decided January 26, 1885.

Bonds issued by Anderson County, in Kansas, under legislative authority, and in payment of its subscription to the stock of a railroad company, after the majority of the voters of the county had, at an election, voted in favor of subscribing for the stock and issuing the bonds, recited, on their face, the wrong statute, but also stated that they were issued "in pursuance to the vote of the electors of Anderson County, September 13, 1869." The statute in force required that at least 30 days' notice of the election should be given, and made it the duty of the Board of County Commissioners to subscribe for the stock and issue the bonds, after such assent of the majority of the voters had been given. In a suit against the board on coupons due on the bonds, brought by a *bona fide* holder of them, it appeared, by record evidence, that the board made an order for the election 33 days before it was to be held, and had canvassed the returns and certified that there was a majority of voters in favor of the proposition, and had made such vote the basis of their action in subscribing for the stock and issuing the bonds to the company ; and the court directed the jury to find a verdict for the plaintiff ; *Held :*

(1.) The statement in the bonds, as to the vote, was equivalent to a statement that the vote was one lawful and regular in form, and such as the law then in force required, as to prior notice ;

(2.) As respected the plaintiff, evidence by the defendant to show less than 30 days' notice of the election could not avail ;

(3.) The case was within the decision in *Town of Coloma* v. *Eaves,* 92 U. S. 484.

(4.) The rights of the plaintiff were not affected by any dealing by the board with the stock subscribed for ;

(5.) The issue or use of the bonds not having been enjoined, for two years and

a half, between the day of election and the time the company parted with the bonds for value, and the county having, for 10 years, paid the interest annually on the bonds, it was estopped, as against the plaintiff, from defending on the ground of a want of proper notice of the election.

(6.) As the bill of exceptions contained all the evidence, and the defendant did not ask to go to the jury on any question of fact, and the questions were wholly questions of law, and a verdict for the defendant would have been set aside, it was proper to direct a verdict for the plaintiff.

This was an action at law, brought in the Circuit Court of the United States for the District of Kansas, by Thomas P. Beal, against the Board of County Commissioners of the County of Anderson, in the State of Kansas, to recover the amount of 90 coupons for $70 each due January 1, 1881, and the same amount due January 1, 1882. The coupons were cut from bonds alike except as to their numbers, of the following form:

"No. ———.        County of Anderson.            1,000.
United States of America,                    State of Kansas.

Know all men by these presents, that the county of Anderson acknowledges to owe and promises to pay to Leavenworth, Lawrence & Galveston Railroad Co., or bearer, one thousand dollars, lawful money of the United States of America, on the first day of January, in the year of our Lord one thousand nine hundred, at the Farmers' Loan and Trust Co. Bank, in the city of New York, with interest at the rate of seven per centum per annum, payable annually on the first day of January in each year, on the surrender of the annexed coupons as they severally become due.

This bond is executed and issued under the provisions of, and in conformity to, An Act of the Legislature of the State of Kansas, approved February 26, 1866, entitled, An Act to amend an Act entitled An Act to authorize counties and cities to issue bonds to railroad companies, approved February 10, 1865, and in pursuance to the vote of the electors of Anderson County, of September 13, 1869.

In testimony whereof, The Board of County Commissioners of the said county of Anderson have caused these presents to be signed by the chairman of said Board and by the clerk of

the county, and to be sealed with the seal of said county, and to be registered by the treasurer of said county.

Dated January 1, 1870.

[SEAL.]             H. CAVENDER, *Chairman.*

A. SIMONS, *Treasurer.*       J. H. WILLIAMS, *Clerk."*

The coupons read thus:

" No. ———                                           $70.

. The county of Anderson, State of Kansas, will pay to the Leavenworth, Lawrence & Galveston Railroad Company, or bearer, at the Farmers' Loan & Trust Co.'s Bank, in the city of New York, on the first day of January, A. D. 188–, seventy dollars, interest due on their bond.

J. H. WILLIAMS,
*County Clerk.".*

The petition averred, as to each bond, that it erroneously recited that it was issued under the provisions of the act of February 20, 1866, whereas it was issued " under the provisions of, and in conformity to, the laws of the State of Kansas then in force, and in pursuance to the vote of the electors of Anderson County, of September 13, 1869, at an election regularly and duly ordered and held for that purpose;" that the bond was issued in payment of a subscription theretofore made by the county to the capital stock of the Leavenworth, Lawrence and Galveston Railroad Company; that on March 27, 1872, the bond was duly registered in the office of the auditor of the State; that, as each coupon falling due prior to January 1, 1881, matured, the same was paid by the officers of the county with the proceeds of a tax levied and collected each year by said county from its tax-payers for that purpose; and that, after said registration, and before the coupons became due, they became, for value, the property of the plaintiff.

The answer admitted, that, pursuant to an order passed by the Board of County Commissioners of the county, on the 11th of August, 1869, ordering a special election therefor, the said board submitted to the qualified voters of the county the ques-

tion of issuing bonds to said company, a copy of the order being annexed to the answer. It averred, that the bonds were issued without any consideration therefor, and without authority of law, and a vote was taken in the county on the 13th of September, 1869, pursuant to said submission, without the legal notice of thirty days having been given, at which election a majority of the persons voting voted in the affirmative; that up to the 1st of January, 1870, and for some time thereafter, the company's track was not completed, equipped or in full operation to the town of Garnett; that on the 5th of November, 1869, the company, through its president, Mr. Joy, corruptly induced Cavender and Lowry, who were a majority of the board, to agree to subscribe for 2,000 shares, of $100 each, of the capital stock of the company, and to sell and transfer the stock, for $1, to Joy, and to issue to Joy, in trust for the company, to be delivered by him to the company, when the road should be completed to Garnett, $200,000 of the bonds of the county; that for that purpose the commissioners made an order, on that day, of which a copy is annexed to the answer, and carried out said agreement; and that the plaintiff had knowledge of such corrupt agreement and of said facts before he acquired any of said bonds or coupons. There was a reply denying all the allegations of the answer.

The case was tried by a jury, which found a verdict for the plaintiff, for $14,321.34, for which amount, with costs, judgment was rendered. The defendant brought a writ of error.

There was a bill of exceptions setting forth all the evidence. The order of August 11, 1869, made by the board, was as follows:

"Ordered by the Board, that a special election be held in the several voting precincts in the county of Anderson, on Monday, September 13, 1869, whereat shall be submitted to the qualified voters, electors of said county, for adoption or rejection, the following proposition, to wit: Shall the county of Anderson subscribe $200,000 to the capital stock of the Leavenworth, Lawrence & Galveston Railroad Company, and issue the bonds of the county in payment thereof; said bonds pay-

able thirty years after their date, bearing interest at the rate of 7 per cent. per annum, payable annually ; said bonds to bear date of January 1, 1870, and to be issued and delivered to said railroad company on the 1st day of January, A. D. 1870, and before that time, if said railroad shall on or before that time complete its line of railway to the town of Garnett, in said county ; and, if said line of railway shall not be completed thus far by that time, then said bonds to be issued and delivered when said line of railway is completed to the town of Garnett, in said county, provided the county of Anderson be released from all propositions or votes taken to subscribe stock and issue bonds to said railroad company. Electors desiring to vote on the above proposition shall have their tickets written or printed as above, and shall add thereto, for or against the subscription of stock to the Leavenworth, Lawrence and Galveston R. R. Co., as the electors may desire to vote.

H. CAVENDER, *Chairman.*

Attest :                                    REUBEN LOWRY, *Member.*

J. H. WILLIAMS, *Clerk.*"

Among the proceedings of the board were these:

" COUNTY CLERK'S OFFICE, GARNETT,

ANDERSON COUNTY, KA'S, *September* 17, 1869.

Board of County Commissioners met pursuant to law for the purpose of canvassing returns of the election, held in said county on the 13th day of September, 1869, for the purpose of voting upon a proposition to vote stock to certain railroad companies.

Present: H. Cavender, chairman ; J. B. Lowry, members present; and we find the vote as follows :"

Then followed a statement showing that there were 551 votes in favor of the proposition, and 372 against it, and the following certificate :

" We hereby certify that the proposition to subscribe stock to the Leavenworth, Lawrence & Galveston Railroad Company

received five hundred and fifty-one votes, and that there were three hundred and seventy-two votes against said proposition.

H. CAVENDER, *Chairman.*

J. B. LOWRY, *Member.*

Attest :

J. H. WILLIAMS, *Clerk.*"

The order of November 5, 1869, made by the board, contained the following :

" *Resolved*, That the Board of County Commissioners of Anderson County, Kansas, for and in behalf of Anderson County, in accordance with the vote heretofore had and taken of the electors of said county to that effect, hereby subscribe for two thousand shares of the capital stock of the Leavenworth, Lawrence and Galveston Railroad Company, of one hundred dollars each, making in amount two hundred thousand dollars.

*Resolved*, That the stock above subscribed for by this Board in behalf of Anderson County is hereby sold and transferred, for and in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, to James F. Joy, president of said railroad company, and the chairman of this Board is authorized to sign a transfer of said stock to said James F. Joy, and to assign the certificate for said stock issued to Anderson County by said railroad company, and to authorize, in such assignment, the necessary transfer of said stock on the books of said company."

Among the proceedings of the board were these :

" COUNTY CLERK'S OFFICE, GARNETT,

*July* 8, 1870.

Board of County Commissioners met pursuant to adjournment ; full quorum present ; minutes of preceding meeting read and approved.

Whereas, on the 5th day of November, A. D. 1869, the Board of County Commissioners of Anderson County, State of Kansas, did formally issue to the Leavenworth, Lawrence & Galveston Railroad Company the bonds of Anderson County to the

sum of $200,000, according to provisions of the vote of the electors of said county, and did place the said bonds in the hands of James F. Joy, to be delivered to said railroad company when the said railroad should be completed to the town of Garnett, said bonds to bear interest at the rate of 7 per cent. per annum from the 1st day of January, 1870, but in case said railroad should not be completed to Garnett by the 1st day of January aforesaid, the interest accruing upon said bonds from said first day of January, 1870, to the time said road should be completed to said town of Garnett should be cancelled ;

And whereas, on the 8th day of July, 1870, M. R. Baldwin, sup't of said L., L. & G. R. R. Co., did certify to this Board that said railroad was completed, equipped, and operated to the town of Garnett on the 1st day of March, 1870 ;

Therefore, this Board do authorize the same James F. Joy to deliver said bonds to said railroad company upon returning the coupons of said bonds, and the amount of interest accrued upon said bonds, between the 1st day of January and March, 1870, to the treasurer of Anderson County.

Minutes read and approved. On motion, Board adjourned to meet on Tuesday, July 19, 1870, at 9 A. M.

Geo. W. Iler,
*Chairman of the Board of County Commissioners,*
Attest : *Anderson County, Kansas.*
[seal.] J. H. Williams, *Clerk.*"

"County Clerk's Office,
Anderson County, Kansas, *Sept.* 5, 1870.

Being the first Monday of September, 1870, Board of County Commissioners met pursuant to law. Present, Geo. W. Iler, chairman, J. B. Lowry, and J. W. Vaughn. Met for the purpose of levying taxes for the year 1870, at which time the following taxes were levied, to be collected for the year 1870, to wit: That there be levied on all the taxable property of said county the sum of four mills per dollar on all taxable property of said county, for road purposes. It is hereby ordered, that there be levied on the taxable property of Anderson County the sum of 7½ mills per each dollar, to pay ten months' inter-

est on the bonds of said county issued to the Leavenworth, Lawrence & Galveston Railroad Company, for the year 1870, the two months' interest from January 1, 1870, to March 1, 1870, having been agreed upon between said railroad company and the Board of County Commissioners, to be cancelled.

Iler and Vaughn, for the levy.

J. B. Lowry enters his protest as follows :

The undersigned, commissioner of Anderson County, protests against the action of the majority of said Board in the matter of the levying of taxes for the payment of the interest on the L., L. & G. R. R. bonds for the following reasons, to wit :

Said bonds are not legally in the hands of said railroad company, if in the hands of said railroad company at all.

·J. B. LOWRY,<br>
*Member of the Board of County*

Attest :                    *Commissioners of Anderson County.*
[SEAL.]   J. H. WILLIAMS, *Clerk."*


After the plaintiff had offered in evidence the coupons sued upon, and one of the bonds (the bond having on it a certificate of the auditor of the State, dated March 27, 1872, that it had been regularly issued, and had been duly registered in his office, under the act of March 2, 1872, and a guaranty by the company of the payment of it, and of its coupons), and the order of August 11, 1869, and the proceedings of September 17, 1869, and July 8, 1870, and September 5, 1870, and a copy of the registration of the bonds in the office of the auditor of the State, he rested his case. Thereupon the defendant demurred to the evidence, and asked the court to declare the law to be, that, upon the pleadings and proofs, the plaintiff was not entitled to recover, but the court refused so to do, and the defendant excepted.

The defendant then introduced the two resolutions of November 5, 1869, above set forth ; and also gave evidence for the purpose of showing that previous notice of the holding of the election was published in a newspaper at Garnett only twenty-four days before the day of the election, and not thirty days. There was also evidence given in reply, by the plaintiff, to show

that the county paid the interest on the bonds every year, down to that which fell due January 1, 1881; that in March, 1872, when the bonds were registered in the office of the auditor of the State, they belonged to the company; and that it afterwards sold them for full value to various parties.

At the close of the evidence, the court instructed the jury to find a verdict for the plaintiff, and the defendant excepted to such instruction.

*Mr. A. Bergen* for plaintiff in error.—The bonds in suit recite that they were issued in conformity with the act of the Kansas legislature of February 26, 1866. This is equivalent to a declaration that the requirements of that act as to preliminary proceedings necessary to the validity of the issue have been complied with. *McClure* v. *Oxford*, 94 U. S. 429, 432; *Lewis* v. *Commissioners*, 105 U. S. 739, 749. The act of 1866 was repealed when these bonds were issued, and another act passed in 1869 was in force. The former required twenty days' notice of the meeting called to authorize the issue; the latter required thirty days' notice. This is a good defence, which may be availed of against a purchaser for value. *Buchanan* v. *Litchfield*, 102 U. S. 278, 292. *Commissioners of Johnson County* v. *January*, 94 U. S. 202, is not in conflict with this. The registration of these bonds was made before the act of 1872 took effect, and is nugatory. *Bissell* v. *Spring Valley Township*, 110 U. S. 162. The plaintiff has not shown that the thirty days' notice of the meeting required by the act of 1869 was given. It was incumbent on him to do this affirmatively. The act of 1866 required notice in a newspaper: that of 1868 (which repealed the act of 1866) notice by posting and notice in a newspaper; that of 1869 required notice but did not indicate how it should be made. It should be given as required by the act of 1868, thirty days in advance, by posting, and by publication. The evidence shows twenty days' notice by publication, but witnesses did not know of posting. Lastly, these questions are *res judicata.*

*Mr. Wallace Pratt* and *Mr. Jefferson Brumbach* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He recited the facts, as above stated, and continued:

It is not disputed that the recital, in the bond, that it was issued under the act of February 26, 1866, Sess. Laws of Kansas, 1866, ch. 24, p. 72, was an error. That act authorized county subscriptions to the stock of railroad companies, when authorized by a majority of the votes cast at a county election, if twenty days' notice of the election had first been given "in some newspaper published and having general circulation in the county, or, in case there be no paper published in the county, then by written or printed notices posted up in each election precinct, twenty days previous to the day of such election;" and it authorized bonds of the county to be issued in payment for the stock. But it was repealed by the enactments of sections 1 and 2 of chapter 119 of the General Statutes of Kansas, of 1868 (pp. 1123, 1127), and for it were substituted sections 51, 52 and 53 of chapter 23 of such General Statutes of 1868, entitled "An Act concerning private corporations," pp. 203, 204. Those sections authorized subscriptions by counties to the stock of railway companies created by Kansas, if the subscription was first assented to by a majority of the qualified voters of the county, at an election of which notice should be given "at least sixty days before the holding of the same." By the act of February 27, 1869, Sess. Laws of Kansas, 1869, ch. 29, p. 108, sections 51, 52 and 53 of chapter 23 of the General Statutes of 1868, were repealed, and the following sections were substituted:

"SEC. 51. The board of county commissioners of any county, the city council of any city, or the trustees of any incorporated town, may subscribe for and take stock, for such county, city or town in, or loan the credit thereof to, any railway company duly organized under this or any other law of the State or Territory of Kansas, upon such conditions as may be prescribed by the aforesaid county, city or town authorities; *Provided, however,* that a majority of the qualified voters of such county, city or town, voting upon such question of subscribing and taking such stock, shall, at a regular or special election to be held therein, first, assent to such subscription and the terms

and conditions prescribed as aforesaid, upon which the same shall be made; *and provided, further,* that when such assent shall have been given, to such subscription as aforesaid, it shall be the duty of the said county, city or town authorities, as the case may be, to make such subscription.

"Sec. 52. A special election may be ordered by the county commissioners of any county, the city council of any city, or the corporate authorities of any town, at any time, for the purpose of ascertaining the sense of the voters of such county, city or town, as contemplated in the preceding section. Notice of such election shall be given at least thirty days before the holding of the same, and the question or questions to be submitted thereat shall be set forth in such notice.

"Sec. 53. Upon the making of such subscription, such county, city or town shall thereupon become, like other subscribers to such stock, entitled to the privileges granted, and subject to the same liabilities imposed by this act, or by the charter of the company in which such stock is taken, except as the same shall be varied and limited by the terms and conditions upon which the said subscriptions shall have been authorized and made. And it shall be the duty of the board of county commissioners or city council or trustees of the town, making such subscription as aforesaid, to pay for the same and the stock thereby agreed to be taken by such county, city or town, by issuing to the company entitled thereto, the bonds of such county, city or town at par, payable at a time to be fixed, not exceeding thirty years from the date thereof, bearing interest at the rate of seven per cent. per annum, and with interest coupons attached.".

It is very clear that there was legislative authority, under the act of 1869, for the issuing of the bonds in question. There was an election, and the requisite majority of those who voted assented to the proposition for the subscription to the stock and the issue of the bonds; and the subscription was made by the proper officers, and they issued the bonds, and when it was certified to them that the road was completed to Garnett they authorized the bonds to be delivered to the company, and the bonds were delivered in payment for the subscription and for

the stock agreed to be taken. The only question made is as to the notice of the election.

It is contended that the recital in the bond, that it is issued under the provisions of the act of 1866, is a recital that only twenty days' notice of the election was given. But the meaning of the act of 1866 was, that at least twenty days' notice should be given, and even if the recital amounted to a statement that the notice prescribed by that act had been given, it would not necessarily mean that exactly twenty days' notice, or only twenty days' notice, had been given.

In the case of *McClure* v. *Township of Oxford*, 94 U. S. 429, cited by the defendant, the bonds were issued under an act which took effect only eighteen days before the election was held, and, as the act required thirty days' notice of the election, it was held that the face of the bond, with the act recited in it, showed that the statute had not been complied with. Wherever the want of legislative authority appears by the face of the bond, taken in connection with the act which the bond mentions, every taker of the bond has notice of the want of power. But no such case is here presented.

The bond recites the wrong act, but if that part of the recital be rejected, there remains the statement, that the bond "is executed and issued" "in pursuance to the vote of the electors of Anderson County, of September 13, 1869." The act of 1869 provides, that when the assent of a majority of those voting at the election is given to the subscription to the stock, the county commissioners shall make the subscription, and shall pay for it, and for the stock thereby agreed to be taken, by issuing to the company the bonds of the county. The provision of section 51 is, "that when such assent shall have been given," it shall be the duty of the county commissioners to make the subscription. What is the meaning of the words "such assent"? They mean the assent of the prescribed majority, as the result of an election held in pursuance of such notice as the act prescribes. The county commissioners were the persons authorized by the act to ascertain and determine whether "such assent" had been given; and necessarily so, because, on the ascertainment by them of the fact of "such assent," they were

charged with "the duty"—that is the language—of making the subscription, and the duty of issuing the bonds. They were equally charged with the duty of ascertaining the fact of the assent.

The record evidence of their proceedings shows, that their order for the election was made thirty-three days before the election was to be held; that they met "pursuant to law for the purpose of canvassing returns of the election;" that they discharged that duty and certified that there was a majority of votes in favor of the proposition; that, in November, 1869, they resolved that, "in accordance with the vote, heretofore had and taken, of the electors of said county to that effect," they subscribed for the stock; and that, in July, 1870, in their order authorizing the bonds to be delivered by Joy to the company, they recited that the bonds were issued "according to the provisions of the vote of the electors of said county." In view of all this, the statement by the commissioners, in the bond, that it is issued "in pursuance to the vote of the electors of Anderson County, of September 13, 1869," is equivalent to a statement that "the vote" was a vote lawful and regular in form, and such as the law then in force required, in respect to prior notice. The case is, therefore, brought within the cases, of which there is a long line in this court, illustrated by *Town of Coloma* v. *Eaves*, 92 U. S. 484, 491, and which hold, in the language of that case, that, "where legislative authority has been given to a municipality or to its officers to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment, that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal." This doctrine is adhered to by this court. *Dixon County* v. *Field*, 111 U. S. 83, 93, 94.

In the present case, there was nothing shown to rebut the

presumption arising from the production of the coupons, that the plaintiff was *prima facie* the holder of them for value. The defendant did not show any want, or failure, or illegality, of consideration. By the passage of the first resolution of November 5, 1869, the board thereby subscribed for the stock. The transactions between the board, on the one side, and Mr. Joy, as president of the company, and the company, on the other side, before and at the time the bonds were finally delivered to the company, were an acceptance of the subscription. The statute, § 53, provided, that, on the making of the subscription, the bonds should be issued to the company, to pay for the subscription and for the stock agreed to be taken. When the bonds were delivered to the company, the transaction was complete, and the bonds, as they afterwards passed to *bona fide* holders, passed free from any impairment by reason of any dealing by the board with the stock subscribed for, to which the county became entitled by the issuing and delivery of the bonds. The board may have committed an improper act in parting with the stock, but that is no concern of a *bona fide* holder of the bonds or coupons.

It is further to be said, that if there was, in fact, any want of proper notice of the election, the omission was only an irregularity in the exercise of an express power to issue the bonds, an irregularity in respect to a step forming part of preliminary conditions, and that the failure of the municipality and of the tax-payers to enjoin the issue or use of the bonds, during the long period from the day of the election, September 13, 1869, until the bonds were registered in March, 1872, when they still belonged to and were in the hands of the company, coupled with the annual payment by the county, for ten years, of the interest on the bonds, are sufficient grounds for holding that the municipality is estopped from defending on the ground of such non-compliance with a condition precedent as is set up in this case, after the bonds have been negotiated for value by the company. The record of the proceedings of the board shows that a tax was levied to pay the interest which fell due January 1, 1871, while the company still held the bonds.

There was no error in overruling the demurrer to the evi-

dence which the plaintiff had given to sustain his case at the time the demurrer was interposed, or in overruling the motion to instruct the jury at that time, that, upon the pleadings and proofs he was not entitled to recover.   Upon such evidence, all of which was record evidence, admitted without objection, and involving no disputed question of fact, but only matters of law, the plaintiff was entitled to recover, as has been shown.   For the same reasons, it was not error to instruct the jury, at the close of the trial, to find a verdict for the plaintiff.   The only defences set up in the answer were those as to the notice of the election and as to the transfer of the stock to Joy.   The first resolved itself into a question of law, and the latter was immaterial.   The defendant did not ask to go to the jury on any question of fact, and, if a verdict had been rendered for the defendant, it would have been the duty of the court, under the views of the law above laid down, to set it aside.

In *Pleasants* v. *Fant*, 22 Wall. 116, 120, this court said, by Mr. Justice Miller, citing *Improvement Co.* v. *Munson*, 14 Wall. 442, 448, that "in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."   Those cases were cited in *Herbert* v. *Butler*, 97 U. S. 319, 320, and this court there said, by Mr. Justice Bradley : "Although there may be some evidence in favor of a party, yet if it is insufficient to sustain a verdict, so that one based thereon would be set aside, the court is not bound to submit the case to the jury, but may direct them what verdict to render."   It is true, that, in the above cases, the verdict was directed for the defendant.   But where the question, after all the evidence is in, is one entirely of law, a verdict may, at the trial, be directed for the plaintiff, and, where the bill of exceptions, as here, sets forth all the evidence in the case, this court, if concurring with the court below in its views on the questions of law presented by the bill of exceptions and the record, will affirm the judgment.

In *Bevans* v. *United States*, 13 Wall. 56, a verdict was directed

for the United States, in a suit by them on the official bond of a public officer, and the ruling was sustained, the evidence for the plaintiff being all of it documentary, this court saying by Mr. Justice Strong : " The instruction was, therefore, in accordance with the legal effect of the evidence, and there were no disputed facts upon which the jury could pass."

The same rule was applied in *Walbrun* v. *Babbitt*, 16 Wall. 577, to the direction of a verdict for the plaintiff, after oral evidence which this court states " was received without objection, and about which there is no controversy," and on which it says it bases its decision. That was a suit to recover the value of goods transferred in fraud of the bankrupt law.

In *Hendrick* v. *Lindsay*, 93 U. S. 143, the Circuit Court directed the jury to find for the plaintiffs, in an action on a bond of indemnity, the plaintiffs' evidence being all of it documentary, and the defendant giving no evidence. This court said, by Mr. Justice Davis: " There were no disputed facts in this case for the jury to pass upon. After the plaintiffs had rested their case, the counsel for the defendant announced that he had no evidence to offer ; and thereupon the court, considering that the legal effect of the evidence warranted a verdict for the plaintiffs, told the jury, in an absolute form, to find for them. This was correct practice where there was no evidence at all to contradict or vary the case made by the plaintiffs; and the only question for review here is, whether or not the court mistook the legal effect of the evidence."

In *Arthur* v. *Morgan*, at this term, 112 U. S. 495, after oral evidence for the plaintiff, there being no evidence for the defendant, the court below had directed a verdict for the plaintiff for the recovery of excessive duties paid under protest, to which direction the defendant had excepted, and this court, treating the question as one of law, as to the proper rate of duty, on undisputed facts, affirmed the judgment.

These decisions are controlling on the point.

*Judgment affirmed.*