EVANS v. FREEMAN et al.

(Circuit Court, E. D. Pennsylvania, September 6, 1905. On Rehearing, January 8, 1906.)

No. 58.

1. CONSPIRACY—ACTION—RECOVERY AGAINST ONE ALONE.

In an action to recover the value of property alleged to have been obtained from plaintiff by false representations against the vendee and plaintiff's agent in the transaction, who are alleged to have known the facts and conspired to cheat the plaintiff, the conspiracy is the foundation of the right of action, since without it the agent's knowledge would bind his principal, and a verdict against the vendee alone cannot be sustained.

On Rehearing.

2. NEW TRIAL—CONSTRUCTION OF ORDER—CORRECTION OF RECORD NUNC PRO TUNC.

In an action against two defendants, based on a charge of conspiracy between them to defraud plaintiff, a verdict was returned against one, and on his motion an order was entered at the same term granting a new trial, on the ground that under the issues there could not be a recovery against one alone. Prior to the entry of such order the attorney for the other defendant, without the knowledge of the court, had procured the entry of a judgment in his favor on the verdict. *Held*, that the effect of the court's order was to set aside the verdict and grant a new trial as to both defendants, and incidentally to vacate the judgment improperly entered, and that the court had power at a subsequent term by a nunc pro tunc order to correct its record, so as to show such vacation in terms.

At Law. On motion for new trial.

J. F. Hendricks and George T. Hunsicker, for plaintiff.
George P. Rich, for defendant Freeman.
John C. Swartley, for defendant James.

HOLLAND, District Judge. This is a suit instituted to recover damages for an alleged conspiracy entered into between these two defendants to induce the plaintiff by false and fraudulent representations to exchange real estate, valued at about $5,400 above incumbrances, and personal property, of the value of $3,000, owned by her in Bucks county, for the worthless equities in four houses situate in Philadelphia, belonging to Henry G. Freeman, Jr., one of the defendants, and in order to effect this alleged fraudulent transaction the statement charges the following: That the plaintiff was the owner of a farm valued at $5,400, over and above incumbrances, and personal property to the value of $3,000; that Henry G. Freeman, Jr., was the owner of four houses in the city of Philadelphia, assessed at $21,800; that Wynne James, one of the defendants, a practicing attorney at the Doylestown bar, in the county of Bucks, was employed by the plaintiff to sell her farm, and that he entered into a conspiracy with Henry G. Freeman, Jr., the other defendant in this case, to induce the plaintiff by false and fraudulent representations to exchange her Bucks county property for the four Philadelphia properties, each subject to a mortgage of $6,000; and, further, that

in order to prevent the plaintiff from rescinding the contract and recovering her property upon a discovery of the worthlessness of the equities in the Philadelphia properties the defendants fraudulently conspired together not to consummate the exchange until they had secured an innocent third party as a purchaser for the plaintiff's Bucks county property, and that such a purchaser, in the person of one Annie H. Costello, was secured, to whom the property was deeded, and is now the owner.

While the statement is a long and rambling elaboration of the facts upon which the plaintiff relies to recover, we gather from it that the material representations which induced the plaintiff to make the exchange, and which it is alleged subsequently turned out to be false, were as follows: That it was represented to her that the Philadelphia properties, four in number, No. 1204, No. 1206, and No. 1208 Vine street, and No. 1816 Columbia avenue, were properties belonging to a wealthy widow by the name of Annie Smith, who had inherited a large fortune in real estate and was desirous of purchasing plaintiff's farm for a country seat and summer residence; that the three Vine street properties were each subject to a $6,000 five per cent. mortgage, due in three years, and that the Columbia avenue property was subject to a $6,500 five per cent. mortgage, also due in three years; that the properties were assessed at $28,000, that the existing equity in each house, over and above incumbrances, was $4,000, and that the real value of the houses was over $40,000. They further represented that they would exchange these properties for her Bucks county farm and personal property, and give her $2,500 in cash, and that the income from the rents of these houses, together with the interest on the $2,500 boot money, would net the plaintiff a yearly income of from $900 to $1,000 per year. It is further alleged that all these representations were false.

At the trial of this case there was evidence produced by the plaintiff in support of the allegation that these representations induced her to enter into the transaction. It also developed at the trial that the properties belonged to Henry G. Freeman, Jr., and his son; that Annie Smith never was the owner of them, but was used simply for the purpose of conveying them to the plaintiff, and at the time the bargain for the exchange of properties was made there were no mortgages on these Philadelphia properties; and that, instead of a mortgage of $6,000, five per cent., due in three years, on each Vine street property, there were two mortgages on each, one of $4,500, due in three years, and one for $1,500, due in one year, each for 5.4 per cent., placed upon them for the purposes of the trade; and that, instead of plaintiff receiving $2,500 as boot money, settlement was deferred for some time after the conveyances had been made, and, when it was had, she was brought out indebted to one of the defendants in the sum of $724. This settlement took place about April 1, 1899, and the conveyance of the property had been consummated in February of the same year. The bargain for this exchange of property was made in the latter part of 1898, and the net result to each party to the transaction down to the bringing of this suit was that

Henry G. Freeman, Jr., received $2,500 in cash from Costello for Mrs. Evans' Bucks county farm and personal property, and Mrs. Evans, through her attorney, Wynne James, who continued to keep the property in charge, received the total of about $850 as rents and principal out of the property, which has now passed out of her possession to satisfy incumbrances. Taking oral and documentary evidence together, there was ample proof to sustain the plaintiff's claim, and the jury found a verdict of $7,273.33 in favor of claimant, but only against Freeman, one of the defendants.

It is alleged that false representations were made by Freeman, who was the seller of the Philadelphia properties. Mrs. Evans did not rely on Freeman's statement, but employed an attorney, Wynne James, to take care of her interest in the transaction. She evidently intended to investigate for herself, and secured James' service for that purpose. It is claimed by both parties that James knew all the facts almost as fully as Freeman. His knowledge of the true state of facts in connection with the Philadelphia real estate was her knowledge and binding upon her, if he informed her and she acted with her eyes open and took the risk incident to real estate transactions. Had she consummated this exchange with full knowledge of the true conditions, she could not recover, even though Freeman had exaggerated and misrepresented his side (Farnsworth v. Duffner, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931); so that it was necessary to show what was alleged in the statement in order to recover, to wit, that James and Freeman conspired to deceive plaintiff. The false representations of Freeman could not have injured plaintiff, if her attorney had informed her; but she says he, instead, entered into an unlawful agreement to deceive her, and they together did, by their joint deception, induce her to make the trade. Where the wrong charged in an action for a conspiracy is such as is actionable only when committed by two or more, the foundation of the action is the unlawful combination. Collins v. Cronin, 117 Pa. 35, 11 Atl. 869; Rundell v. Kalbfus, 125 Pa. 123, 17 Atl. 238.

The verdict against Freeman alone cannot be sustained, in view of the fact that the statement claims for an unlawful combination between Freeman and plaintiff's attorney, James, and the evidence submitted by her tended to prove that allegation; and a new trial should therefore be granted, and it is so ordered.

## On Rehearing.

The plaintiff brought an action for conspiracy against the defendants, averring that James, who was her agent and attorney, had entered into a conspiracy with Freeman to induce her by fraudulent misrepresentations to exchange her valuable farm in Bucks county for worthless equities in Philadelphia real estate belonging to Freeman. At the trial the court instructed the jury as follows:

"If, however, you find that there is no conspiracy, and that one or the other made false representations of material facts in regard to this transaction, which resulted in damage, then you would have a right to say that that one is responsible here; or if both, without a conspiracy, made false and fraudulent representations to her about matters material in this transaction,

and they resulted in the damage which she alleges has been done her, then you could find a verdict against both."

The jury brought in a sealed verdict, and handed to the clerk a written memorandum, which was in the following language:

"We, the undersigned, jury in the above-stated case, find in favor of the plaintiffs for $7,273.33, and against Henry G. Freeman, Jr., one of the defendants."

This paper was signed by all the jurors, and, while it is no part of the record (Dornick v. Reichenback, 10 Serg. & R. 84), it was filed with the papers in the case, and shows that the other defendant's (James') name was not mentioned in the rendition of the verdict. The usual practice, however, in taking the verdict of the jury in open court, was followed, and the clerk recorded it in the Circuit Court docket as follows:

"The jurors aforesaid, upon their oaths and affirmations respectively do say that they find for plaintiffs and against Henry G. Freeman, Jr., one of the defendants, and assess the damages at $7,273.33."

This verdict was rendered by the jury on May 3, 1905, and on May 6, 1905, Mr. Freeman, by his attorney, filed a motion in arrest of judgment, and also moved for a new trial, and set forth, among other reasons therefor, the error of the court in its charge to the jury as above stated, and that the verdict was against the law and the evidence. There was no motion for a new trial made by either the plaintiff or any one else, as to James. While the finding of the jury and the verdict as rendered and recorded are all silent as to James, it was assumed by his counsel that the verdict was equivalent in law to a finding in his favor, and on May 10, 1905, a præcipe for judgment was presented by him to the clerk, who, without the knowledge, permission, or direction of the judge, treated it as the ordinary routine work of his office, and made the following entry in his docket:

"Præcipe for judgment on the verdict as to Wynne James, one of the defendants, filed. Judgment accordingly."

With the record thus made up the case was placed upon the argument list, and was heard May 15, 1905, and on September 6, 1905, an opinion was filed granting a new trial as of the latter date, which was at once noted on the Circuit Court docket. Nothing more was done in the case until it came on for trial at the October term, 1905, when counsel for the plaintiff was informed that defendants claimed a new trial had only been awarded as to Freeman, and that under the opinion of the court plaintiff could not claim on the pleadings against him alone. Thereupon counsel for plaintiff filed a petition to reinstate the motion for a new trial and for a reargument, which was heard on November 28, 1905, and it was urged that the order entered September 6, 1905, awarding a new trial to Freeman, should be stricken from the record, and a judgment entered against him for the amount of the verdict, or the order granting a new trial so amended as to correct the record in accordance with the facts as to James. On the part of Freeman it was contended that, the term having ended, the matter had passed out of the control of the court.

The rule as to the power of the court over a verdict or judgment during the term in which the one is rendered or the other is entered is stated by Black on Judgments, § 346:

"It is not irregular for a court to set aside during the term a judgment rendered by it, without notice to the defendant. It cannot be assumed that the want of notice was prejudicial to him; the court having authority to set aside such judgment despite any objections he could make. And in one case this was done, without notice, although the docket had been closed, the plaintiff's counsel had left the court, and a similar motion had been previously refused."

And again we find in the same authority (section 153):

"During the whole of the term in which any judicial act was done the proceedings were considered to continue in fieri, and even after a judgment was rendered the record was said to remain in the breast of the judges of the court and in their remembrance, and therefore the judgment was subject to such amendment or alteration as they might direct. * * * The authorities all hold that a court has plenary control of its judgments, orders, and decrees during the term at which they are rendered, and may amend, correct, modify or supplement them, for cause appearing, or may, to promote justice, revise, supersede, revoke or vacate them, as may in its discretion seem necessary, * * * and may, during the term, of its own motion correct a mistake by expunging such order and entering an order in accordance with the law of the case."

In Fisher v. Railway Company, 185 Pa. 602, 40 Atl. 97, it is said:

"Until judgment the verdict is under control of the court, by virtue of its common-law powers, as the judge is an essential constituent of the tribunal for jury trial, and may refuse judgment and set aside the verdict for any reason which appeals to his judicial discretion. It is not necessary that his reason should appear of record, though it is the better practice that it should."

In Lance v. Bonnell, 105 Pa. 46, 47, it is said:

"It is certainly true that the granting of a new trial is a matter for the exercise of a sound discretion merely, and is not reviewable here on a writ of error. There is, however, a just limitation to this remedy. The power of the court is annulled when the day for discretion is past. It must be conceded, however, that it was competent for the court, upon a proper showing, to waive the limitation imposed by its own rule of practice. The allowance of the motion on the 20th of November, 1882, as of the 21st day of October, 1882, which was the date of the rendition of the verdict, nunc pro tunc, simply dispensed with or waived the restrictions of the rule. It is true that a judgment had been regularly entered upon the verdict; but, as the term had not yet expired, the judgment was as much under the control of the court as the verdict. The whole term, excepting for the rule of practice, is considered as but one day, and the judges may, at any time within the term, revise its judgments. The record is incomplete until the term is ended."

In the Pennsylvania practice, the docket entry, "Rule absolute for new trial," implies all that is meant by the words, "Judgment vacated, verdict set aside, and new trial granted." The practice in the Circuit Court of the United States in this district is to enter in the appearance docket, "Opinion granting a new trial filed." These words have always had the effect of disposing of any docket entries which stood in the way of the order, and imply all that is meant by the words, "Judgment vacated, verdict set aside, and new trial granted." Fisher v. Railway Co., supra. It seeme quite clear, then, from the above authorities and

many others to the same effect not cited, that the court has the power during the term to strike from the record a judgment improperly entered, and that the entry of an order awarding a new trial as to one in whose favor such irregularly entered judgment has been noted on the record in effect is an order vacating the judgment and setting aside the verdict at the same time. It seems equally clear that if the order granting a new trial, entered September 6, 1905, during the term, granted a new trial as to James, the court can now correct the record so as to make it state the truth, in accordance with the opinion, as of the date the same was entered.

In the case of Law v. Kennedy and Wife, 2 Walk. 497, there was a verdict for plaintiffs, followed by an argument for a new trial, and on May 31, 1875, the decision was entered on record as "New trial refused." On June 8, 1875, judgment was entered on the verdict. A fi. fa. had been issued and levy made upon the real estate of the defendants. On September 25, 1875, a long time after the expiration of the term at which the judgment was entered, the court made the following order:

"October 9, 1875. The entry of May 31st, 1875, having been written 'Refused,' instead of 'Granted,' as was intended, the said entry is now stricken off and a new trial granted."

The Supreme Court, upon this record, used the following language:

"The striking off the entry, 'New trial refused,' was merely the correction of a mistake. It was not a rejudgment of the case after the lapse of a term, but merely the correction of a mistake made in the entry of the determination of the court. Although after a judgment in a case the court may not at any lapse of time revise its judgment and reach a different conclusion, it has in its power to correct its own actual mistakes in the entry, or misprisions of its clerks, unless, perhaps, when rights have been acquired under the entry which may be injuriously affected against equity. How far a court may thus go we do not undertake to indicate in what we have said, except so far as the facts of this case justify."

The court may order nunc pro tunc entries, as they are called, made to supply some omission in the entry of what was done at the preceding term; yet this is a power the extent of which is limited and not easily defined. In general, mere clerical errors may be amended in this way. In re Wight, 134 U. S. 136–144, 10 Sup. Ct. 487, 33 L. Ed. 865. The whole system of an amendment is but an exercise of the power of correction to reach substantial justice. It is the everyday practice of the court to disregard formal errors or mistakes that do no injustice. The end is the same, that justice be not put to shame by her own ministers. In re Sheppard's Contested Election, 77 Pa. 295–304.

The court, then, had the power, in the exercise of a sound discretion, to grant a new trial against both the defendants on the 6th day of September, 1905; and, if this was done, the right to correct the docket entries at this time to make this fact appear is undoubted. An examination of the opinion filed on that date, in the light of the pleadings in the cause and the reasons for a new trial, will plainly show a new trial was granted as to both. The wrong charged was a conspiracy by the two defendants to deceive plaintiff, and one was her attorney, employed to protect her in the transaction, in which it is claimed she

was deceived by them. No injury could have been done, and no damage could have accrued, if the joint tort or conspiracy be not established; and if there was an injury, as found by the jury, from which damage resulted, it could only arise out of the joint act of both. The act charged could not have been committed by one. If this be not so, Freeman is not entitled to a new trial. He is entitled to a new trial because James is equally responsible with him for the wrong which the jury found was done to the plaintiff. The jury, by the finding for the plaintiff, establishes the existence of the conspiracy, and a verdict cannot be permitted to stand which seeks to make one defendant pay the total damage. To save Freeman from this injustice, a new trial was granted on a verdict which was as indivisible as the alleged joint wrong upon which it was based. It was a verdict that could only stand or fall as to both. It could not stand as to James and fall as to Freeman. When it was set aside, it was set aside as a whole, or not at all. The language used in the opinion shows that both defendants were considered in discussing the reasons for a new trial, and because of their inseparable connection with the transaction the new trial was granted as to both. The action of James, by his counsel, after the term had expired, was a plain indication that he entertained grave doubt as to what the order for a new trial embraced, before the court had any knowledge of the entry of judgment for James, or that there existed any dispute as to the fact that the opinion awarded a new trial against both James and Freeman. Had it been known that judgment had been noted in favor of James at the time of filing the order for a new trial, there is no doubt but that this judgment would have been vacated by referring to it in more specific terms. But under the decisions it is plain that the awarding of a new trial vacated the judgment in favor of him. Motion to rescind order for a new trial refused.

In order that the record may plainly show what was done on September 6, 1905, the following order will be entered:

And now, to wit, January 8, 1906, judgment on the verdict as to Wynne James, entered May 10, 1905, is hereby stricken from the record, and the docket entry made September 6, 1905, which reads, "Opinion granting a new trial filed," be amended so as to read, "Opinion filed awarding a new trial against Henry G. Freeman, Jr., and Wynne James."