## FLANNAGAN v. PROVIDENT LIFE & ACCIDENT INS. CO. et al.

Circuit Court of Appeals, Fourth Circuit.
October 18, 1927.

No. 2634.

**1. Trial ⊘⇒142—Verdict may be directed, where there is no conflict in evidence, or no materially different inferences may reasonably be drawn.**

Where there is no conflict in the evidence, or where no materially different inferences may be reasonably drawn from the evidence, a verdict in accordance with the law may be directed.

**2. Insurance ⊘⇒460—Evidence held to warrant directed verdict for insurance companies under accident policies excluding injuries while intoxicated.**

Evidence that insured was intoxicated when fatally injured while driving automobile *held* sufficient to warrant directed verdict for insurance companies, under accident policy provisions that insurance does not cover injuries received by insured while under the influence of intoxicants.

**3. Insurance ⊘⇒462—Injuries sustained while driving automobile while intoxicated, in violation of state statute, held not covered by accident policies (Prohibition Law Va., §§ 25, 80).**

Insurance companies *held* not liable on accident insurance policies for death of insured, resulting from injuries sustained while driving automobile in intoxicated condition, in violation of Prohibition Law Va. (Acts 1924, c. 407) §§ 25, 80, under policy provisions excepting from coverage accidents encountered while violating the law.

**4. Insurance ⊘⇒146(3)—Rule that ambiguity in policy is construed most strongly against insurer does not apply to refine away terms whose meaning is clear.**

Rules governing construction of written instruments apply to insurance contracts equally as to other contracts, and if insurance contract is at all ambiguous it will be construed most strongly against insurer; but this rule cannot be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties,' fundamental inquiry being intention of the parties, to be gathered from the words of the policy.

**5. Insurance ⊘⇒462—Accident policy provisions, excluding "accidents encountered while violating law," refer to law of place of violation, and not solely of state where policy issued.**

Provision of accident insurance policy, excluding from coverage "accidents encountered while violating law," refers to law of place where violation by insured takes place, and is not limited to the law of the state where the policy is issued.

**6. Insurance ⊘⇒466—Causative connection between intoxicated condition and injuries need not be shown under accident policies excluding from coverage injuries while intoxicated.**

Under accident insurance policies excluding from coverage injuries sustained by insured while under the influence of intoxicants, it is not necessary to show any causative connection between the intoxicated condition of insured and his injuries.

**7. Evidence ⊘⇒123(1)—Mere narration of past occurrence is not part of res gestæ, particularly where declarant is interested party and has had time to consider effect of statement.**

The mere narration of a past occurrence is not a part of the res gestæ of that occurrence, and this is especially true where the person making the statement sought to be proved is an interested party, and has had time to think of the effect of his statement.

**8. Appeal and error ⊘⇒970(2)—Evidence ⊘⇒118—What is admissible as res gestæ is discretionary with trial judge, and in absence of abuse of discretion there is no error.**

There is no well-defined rule as to what is properly admissible as a part of the res gestæ in all cases; but each case presents question for trial judge's discretion, and in the absence of an abuse of that discretion there is no error.

**9. Evidence ⊘⇒128—Exclusion of insured's statement, made 45 minutes after accident, directly contrary to previous statements, held not abuse of discretion.**

Exclusion of statement to physician, made by insured over three-quarters of an hour after the accident, and after he had ample time to reflect on effect thereof as respects his accident policy, which statement was directly contrary to statements made by him immediately after the accident, *held* not abuse of discretion.

**10. Insurance ⊘⇒668(11)—Evidence held insufficient to take case to jury on issue whether accident while insured was driving automobile resulted from defective steering apparatus.**

In action on accident insurance policies, evidence tending to show that accident resulting in death of insured while driving automobile was caused by defective steering apparatus *held* insufficient to go to jury on issue of cause of accident.

**11. Trial ⊘⇒139(1)—Evidence tending to leave issue in realm of speculation and conjecture is not sufficient to take issue to jury.**

Evidence merely tending to leave issue in the realm of speculation and conjecture is not sufficient to take such issue to jury.

**12. Insurance ⊘⇒400—Insurers, by seeking to avoid liability on accident policies because accident was not covered, did not contest policy within statute making policy incontestable after one year (Acts Va. 1918, c. 361).**

Insurance companies, by seeking to avoid liability on accident insurance policies on the ground that accident resulting in insured's death was not covered by policies, because insured was intoxicated at the time and was violating Prohibition Law Va. §§ 25, 80 (Acts Va. 1924, c. 407), did not "contest" policies, within Acts Va. 1918, c. 361, making life insurance policies incontestable for any cause after one year from the date thereof, except for nonpayment of premiums, since insurer, by seeking to uphold policy provisions excepting accident while intoxicated or while violating the law, does not contest validity thereof.

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

Action by Emma N. Flannagan against the Provident Life & Accident Insurance Company and another. Judgment for defendants, and plaintiff brings error. Affirmed.

S. H. Sutherland and George C. Sutherland, both of Clintwood, Va., for plaintiff in error.

John A. Chambliss, of Chattanooga, Tenn. (Sizer, Chambliss & Sizer, of Chattanooga, Tenn., and Morton & Parker, of Appalachia, Va., on the brief), for defendants in error.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge. This is an action at law for recovery on two accident insurance policies, one issued by the Provident Life & Accident Insurance Company, a Tennessee corporation, and one issued by the Employers' Indemnity Corporation, a Missouri corporation, both issued to T. H. Flannagan, with his wife, Emma N. Flannagan, the plaintiff in error and plaintiff below, as beneficiary.

On the night of April 28, 1926, the deceased, T. H. Flannagan, was injured while driving an automobile between the towns of Haysi and Clintwood, in the Western district of Virginia. Prior to leaving Haysi he spent the evening at a hotel there, and, according to the evidence in the case, was drinking to such an extent that he was unquestionably intoxicated. This fact was testified to by a number of witnesses and denied by none. On leaving Haysi, friends endeavored to persuade him not to drive the car; but he went ahead, and it was reported that within a short distance he ran into the abutment of a bridge, but without serious injury to his car, and he proceeded on his way for a distance of about five or six miles, when at a curve in the road he ran straight ahead over the bank and was seriously injured. He was taken to a hospital, where he was treated, but was afterward released, going to his home, where on May 8, 1926, he suddenly died. The evidence tended to show that his death was a result of his injuries in the automobile accident.

The policy issued by the defendant company, the Provident Life & Accident Insurance Company, contains the following pro-

visions: "This insurance does not cover fatal or nonfatal injuries received by the insured * * * while under the influence of intoxicants or narcotics; * * * while violating any law."

The policy issued by the Employers' Indemnity Corporation, contained the following paragraph:

"This insurance does not cover * * * accidents encountered while insured is intoxicated or under the influence of intoxicants or narcotics, whether such condition contributed either directly or indirectly to the accident; * * * accident encountered while violating law."

The law in the state of Virginia, where the deceased resided and where the accident happened, made it an offense to run an automobile while under the influence of intoxicants, and is found in the act of the Assembly of Virginia for 1924 (chapter 407), known as the "prohibition law."

Section 25 of this act reads as follows:

"Section 25. *Running Automobiles, Engines et cetera, While Intoxicated—How Punished.*—It shall be unlawful for any person to drive or run any automobile, car, truck, engine, or train while under the influence of intoxicants. If any person violates the provisions of this section he shall be guilty of a misdemeanor punishable by a fine of not less than one hundred dollars nor more than one thousand dollars, and imprisonment for not less than thirty days nor more than one year, for the first offense; provided the court in a proper case may suspend the jail sentence. Any person convicted of a second or subsequent offense shall be subject to imprisonment for not less than six months nor more than two years. The judgment of conviction shall of itself operate to deprive him of his right to drive any such vehicle or conveyance for a period of one year from the date of such judgment. If any person so convicted shall, during the year, drive any such vehicle or conveyance, he shall be guilty of a misdemeanor; but nothing in this section shall be construed as conflicting with or repealing any ordinance or resolution of any city, town or county, heretofore or hereafter adopted, which restricts still further the rights of such person to drive any such vehicle or conveyance."

Section 80 of the same act defines who may be deemed intoxicated, and reads as follows:

"80. *Who Deemed Intoxicated—Of Intemperate Habits.*—Any person who has drunk enough ardent spirits to so affect his manner, disposition, speech, muscular move-

ment, general appearance or behavior, as to be apparent to observation, shall be deemed for the purposes of this act, to be intoxicated, and if he shall continue to use ardent spirits as a beverage during the period of one year, so as to produce the above results from time to time, he shall be deemed a person of intemperate habits within the meaning of this act."

Suit was brought in the District Court of the Western District of Virginia by the beneficiary named in the two policies, and on the trial of the case the judge below directed a verdict for the defendants, and, after overruling the motion of the plaintiff to set aside the verdict and grant a new trial, gave judgment in favor of the defendants for the cost, from which action of the trial court the plaintiff sued out this writ of error.

Three main points are raised on behalf of the plaintiff below, who will be referred to as plaintiff here: First, that the court erred in directing a verdict for the defendants; second, that the court erred in not allowing a witness to answer certain question propounded to him as to statements made by the deceased after the accident, it being claimed that said statements were a part of the res gestae; and, third, that there was evidence tending to show that the steering apparatus of the automobile, driven by the deceased at the time of his death, was defective, and that on this point the case should have been allowed to go to the jury.

[1] It may be assumed that there was evidence upon which a jury could have based a finding that Flannagan came to his death by reason of the accident, which occurred on April 28, although he had left the hospital and died at his home on May 8 following.

In the case of Anderson et al. v. Southern Ry. Co., 20 F.(2d) 71, decided by this court, on June 3, 1927, it was held: "The rule in federal courts is that, where there is no conflict in the evidence, or where no materially different inferences may be reasonably drawn from the evidence, a verdict in accordance with the law may be directed. Delk v. Railroad, 220 U. S. 587, 31 S. Ct. 617, 55 L. Ed. 590."

In this case Mr. Justice Harlan says: "The rule upon that subject is well settled by the authorities. It is that, 'when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.'"

See, also, Small Co. v. Lamborn Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597, citing Improvement Co. v. Munson, 14 Wall. 442, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Bowditch v. Boston, 101 U. S. 16, 25 L. Ed. 980; County Commissioners v. Beal, 113 U. S. 227, 5 S. Ct. 433, 28 L. Ed. 966; Delaware, etc., R. R. v. Converse, 139 U. S. 469, 11 S. Ct. 569, 35 L. Ed. 213; and C., M. & P. Ry. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041, citing B. & O. R. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419.

[2] Applying this principle, it seems clear that the learned trial judge acted properly in directing the verdict. The evidence shows conclusively that the deceased was drunk immediately before starting upon the journey that ended in his death, and had been in an intoxicated condition for some time prior thereto. The uncontradicted statements show that he staggered when he walked, that he was boisterous, and that he fell over a woman in attempting to show her some papers. Deceased was importuned by those present not to undertake to drive the car, and shortly after he started out it was reported that he had run into the abutment of a bridge, but was able to continue his journey. One of the witnesses started after him, but returned upon finding that he had gone on. The necessary inference from the evidence in the case is not only that the deceased at the time was under the influence of intoxicants, but that he was intoxicated. Had he been intoxicated to any greater degree than the evidence showed that he was, he would probably not have been killed, for he would have been unable to travel at all.

Courts must necessarily recognize modern conditions. The great changes that have taken place in recent years in the method of travel, the largely increased use of motor vehicles, the great improvement in highways, and the resulting great increase in danger, not only to themselves, but to others who travel the highways, through persons driving motor vehicles while not in possession of their normal faculties, or while intoxicated to any perceptible degree, have made it necessary to penalize intoxication under these conditions. This situation has necessarily been recognized in all branches of commerce, and insurance companies, as a matter of necessary protection to themselves, and as a matter of justice to others insuring with them, have been compelled to insert

clauses in their policies similar to those in this case.

[3] From the evidence in this case no materially different inferences may be reasonably drawn. The deceased was running an automobile while intoxicated, within the meaning of the Virginia statute, above cited, and in so doing was violating the Virginia law. This being true, under the conditions of the policies sued on, there was no resultant liability for his death.

[4] It is contended on behalf of the plaintiff that the policy should be construed strictly against the insurer and liberally in favor of the assured, and that such construction would render the defendants liable.

"The rules established for the construction of written instruments apply to contracts of insurance equally with other contracts." Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

"In every case, the fundamental inquiry must be as to the intention of the parties, to be gathered from the words of the policy." Royal Ins. Co. v. Martin, 192 U. S. 149, 24 S. Ct. 247, 48 L. Ed. 385.

"If at all ambiguous, it is fundamental that contracts of insurance are to be construed most strongly against the insurer." Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740.

"But this rule cannot be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties.  *  *  *" 7 Encyc. U. S. Sup. Ct. Rep. pp. 101–103, and cases cited in notes; Hawkeye, etc., Ass'n v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46; Speelman v. Iowa State, etc., Ass'n (C. C. A.) 4 F.(2d) 501; Mack v. Insurance Co. (C. C. A.) 12 F.(2d) 416; Insurance Co. v. Devore, 88 Va. 778, 14 S. E. 532.

In this case the language of the contract is clear, simple, and plain, and there is no ambiguity that requires either a strict or a liberal construction. It not only seems to be reasonable, but it is apparently a necessity, that the parties should contract as they did, and, having so contracted, the contract must be given full force and effect.

[5] Again it is contended on behalf of the plaintiff that the language in the policies, "accidents encountered while violating law," refers to the laws of Missouri and Tennessee from which states the policies were issued. This contention is clearly wrong, for a man living in the state of Virginia could not violate a law of the state of Missouri or the state of Tennessee, and the plain reason of the situation shows that the parties were contracting with reference to a violation of a law by the insured at the place where he was when the violation took place.

[6] It is argued that, even if there were intoxication and violation of law as contended by defendant, these would not defeat recovery, unless there was a causative connection between these and the death of insured, and that whether such causative connection existed or not was a question for the jury to determine. We think, however, that by their express provisions the policies do not cover injuries received while the insured was intoxicated or under the influence of liquor, as he clearly was at the time when he received the injuries resulting in his death, and that it was not necessary to show any causative connection between the intoxicated condition and the injuries. 1 C. J. 457; Standard Life Ins. Co. v. Jones, 94 Ala. 434, 10 So. 530; Shader v. Ry. Passenger Assur. Co., 66 N. Y. 441, 23 Am. Rep. 65; Furry v. Gen. Accident Ins. Co., 80 Vt. 526, 68 A. 655, 15 L. R. A. (N. S.) 206, 130 Am. St. Rep. 1012, 13 Ann. Cas. 515; notes 9 Am. St. Rep. 176, 13 Ann. Cas. 516. This being true, it is not necessary that we consider whether a causative connection need be shown between the violation of law and the injuries, or whether the causative connection was not shown so conclusively as to justify the court in directing a verdict on that ground. See Insurance Co. v. Seaver, 19 Wall. 531, 22 L. Ed. 155.

[7] As to the second point, that the trial court erred in excluding a declaration made by the deceased to his physician, more than three-quarters of an hour after the accident happened, and after he had made other and contradictory statements immediately after the accident, it has been held by the Supreme Court of the United States that, to be properly admitted as a part of the res gestæ, statements should be "necessary incidents of the litigated act  *  *  *  and  *  *  *  not produced by the calculating policy of the actors." St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936.

"The mere narration of a past occurrence is not a part of the res gestæ of that occurrence." Boston, etc., Ry. Co. v. O'Reilly, 158 U. S. 334, 15 S. Ct. 830, 39 L. Ed. 1006.

This is especially true where the person making the statement sought to be proven is an interested party and has had time to think of the effect of his statement. An opinion of this court (Guild v. Pringle, 130

F. 419) discusses this point at some length and is in line with the authorities above quoted.

[8] There can be no well-defined rule as to what is properly admissible as a part of the res gestæ in all cases, and in passing on the question in each individual case the trial judge is acting in the exercise of his discretion, and in the absence of an abuse of that discretion there is no error. Railroad v. Ashley (C. C. A.) 67 F. 209; St. Clair v. United States, supra.

[9] Here the deceased had made a statement at the place of the accident directly contrary to the one offered to be proven, which was made at least three-quarters of an hour after the accident, and after he had had ample time to reflect on the effect of his intoxication as to his insurance policy. The statement made by the deceased that was offered was clearly in the nature of a self-serving declaration, and we certainly cannot say that in excluding it the judge below abused his discretion.

[10] As to the third point, that there was evidence tending to show that the steering apparatus of the automobile was defective, and that this, rather than the condition of the deceased, was the cause of the accident, such a position is not supported by the record. It is true that there was some evidence as to the steering gear of the deceased's automobile being defective, but the only evidence on that point also established the fact that this defect could only interfere with the steering of the automobile when turned sharply either to the right or the left. The evidence was also uncontradicted to the effect that the examination of the road at the point of the accident showed that the tracks of the deceased's automobile went in a straight line, turning neither to the right nor to the left. This being true, the defect in the steering gear, if it existed, could not possibly have caused the accident.

[11] In addition to this, the record only tended to "leave the matter in the realm of speculation and conjecture." This is not sufficient. C., M. & St. Paul Ry. v. Coogan, supra, and cases there cited. We are of the opinion that the theory advanced that the defective steering gear was the cause of the accident is without any substantial support in the evidence. In any event, we do not see how this could help the case of plaintiff; for, as we have seen, the intoxicated condition of decedent precluded recovery under the policy, without reference to the cause of his injuries.

[12] It is contended on the part of the plaintiff that under a statute of Virginia, enacted in 1918 (Acts 1918, p. 539), the Provident Life & Accident Insurance policy is not contestable for any cause, it having been in effect for more than one year. The statute reads as follows:

"In any action, motion or other proceeding on a policy of life insurance hereafter issued to any person residing in this state at the time of the issuance thereof, or which is otherwise subject to the laws of this state, to recover for the death of such person, it shall be no defense that the insured committed suicide; * * * nor shall such policy be contestable for any cause after one year from the date thereof, except for nonpayment of premiums."

It would seem that, as this statute specifically refers to life insurance policies, it would have no application to the accident insurance policies under consideration here. It is not necessary to decide this point, however, as it has been held that, even where the provision as to contestability does apply, seeking to uphold the plain provisions of the contract of insurance does not constitute a contest as to the validity of the policy. "Where there has been no assumption of risk, there can be no liability." Hearin v. Standard Life Ins. Co. (D. C.) 8 F.(2d) 202. See, also, Mack v. Connecticut General Life Ins. Co. (C. C. A.) 12 F.(2d) 416, and cases there cited.

There being no error in the trial, the judgment of the court below is accordingly affirmed.