## John P. Roth v. Buettell Bros. Co., Appellant.

**Master and servant:** ELEVATOR ACCIDENT: NEGLIGENCE: EVIDENCE. In this action for injury to an employee in falling down an unguarded elevator shaft the evidence is reviewed and the questions of contributory negligence, the negligence of a fellow servant in failing to close the elevator door, and of defendant in failing to properly guard and light the shaft were for the jury.

**Same:** EVIDENCE: SCOPE OF CROSS-EXAMINATION. Where a witness had testified that the elevator of defendant was used by its employees in going to and from the various floors of the building, an inquiry on cross-examination as to how often plaintiff used the same should have been permitted, but as no time was fixed its refusal was not prejudicial; since to charge plaintiff with notice his use must have been subsequent to the defects complained of.

**Same:** EVIDENCE: MATERIALITY: PREJUDICE. Where plaintiff prior to his injury had been employed by defendant for several years under contract, proof that he returned to work after the injury without offering to make a new contract was not material on the question of his incapacity; and where it appeared that plaintiff finally quit work voluntarily, evidence that defendant did not offer to make a new contract was not prejudicial.

**Same:** EVIDENCE: DAMAGES. An employee injured while in the masters service may voluntarily seek other employment upon discovering his inability to properly perform the service expected of him; and to render proof of his compensation in the new employment admissible on the question of damages for the injury, it is not necessary to show that he obtained the highest wages possible; and in the absence of evidence to the contrary it will be presumed that he received the value of the new service.

**Negligence:** INSTRUCTIONS. The mere inference from one instruction that a verdict may be returned against defendant in a personal injury action, without a finding of negligence, is not objectionable where other instructions clearly state that such a finding is essential to recovery.

**Same.** Where the effect of contributory negligence is clearly stated in other instructions, failure to refer to the same in connection

with definitions of the ordinary risks assumed by employees, and the degree of care required of the master for the protection of employees, is not material.

Same: SERVANT'S DUTY TO REPAIR. Where it is not the servant's duty 7 to make repairs he is not required to replace a broken elevator bar or guard; especially where it is not shown that the materials for the purpose were accessible.

Same: KNOWLEDGE OF DEFECTS. Where the jury was properly told 8 in other instructions that unless defendant by the exercise of reasonable care should have discovered and remedied defects from which plaintiff was injured there could be no recovery, failure of another instruction to limit defendants knowledge of the defects to an exercise of reasonable care was not prejudicial.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

TUESDAY, JANUARY 19, 1909.

REHEARING DENIED SATURDAY, APRIL 10, 1909.

ACTION for damages resulted in a judgment for plaintiff. The defendant appeals.—*Affirmed.*

*Henry Michel* and *Hurd, Lenehan & Kiesel,* for appellant.

*T. J. Fitzpatrick,* for appellee.

LADD, J.—The defendant occupied a building in Dubuque facing east on Clay Street and extending back to the alley, consisting of five stories and a basement. Each story was divided by a partition in the center running east and west through which there were openings or archways. About fifteen feet from the rear and at the north side, directly opposite the archway nearest the end was a freight elevator operated by electricity from the basement to the fifth floor. The shaft was inclosed on all sides from

floor to ceiling with the entrance from the south through two doors, one opening out to the east and the other to the west. The east door closed first, and was fastened by two vertical bolts on the south side and near the west edge, one entering a socket in the floor at the bottom and the other entering a like socket at the top. The west door was held closed by means of an ordinary latch, consisting of a metal strap some ten inches long, with one end attached eight or nine inches from the edge of the west door, and the other extending through a "keeper" or slot fastened to the door near its east edge, and in which it could be raised or lowered about an inch and, over the edge of the east door, an inch or two. This end, when the door closed, fell into a notch in a catch fastened to the east door, and to open the door the end of the strap was raised by a thumb lever passing through the west door. Some time prior to the injury the part designated the "keeper" or slot had been broken, so that the door did not fasten automatically when it was swung or pulled to. Inside of the doors was a scantling or bar, two inches by four inches, extending horizontally across the entrance about three feet above the floor. It was hinged to the southeast corner of the framework of the shaft, and at the west end dropped into a notch, so that when down it formed a guard or barrier to the shaft. It was removed from the entrance by lifting the west end up and slightly beyond a perpendicular position. The bar to the shaft on the first floor had been broken about two months prior to the injury, and the portion attached by the hinge nailed in a perpendicular position to the framework of the shaft. The grounds of negligence charged are the omission to keep the latch to the door and the bar in repair, and to maintain a sufficient light at the entrance to the elevator. The plaintiff had been in the employment of defendant nearly fourteen years, and for about nine years in this building. He was a foreman, and had worked for several months on

the three upper floors, but on the 17th of October, 1905,
was engaged in sorting samples on the first floor.  Shortly
after four o'clock in the afternoon an employee named
Ulzig came from the third floor to ascertain where certain
books should be placed.  Plaintiff told him to put them
on the fifth floor, but, as he did not seem to understand,
said he would go up with him.  As they approached the
shaft plaintiff directed Ulzig to get a truck, as he would
need it to haul the books, and, being then eight or ten feet
from the entrance, approached it, and noticing the west
door open, and no bar there, and supposing he saw the
framework of the elevator, stepped in and fell down the
shaft some fourteen feet to the basement below.  Shortly
before an employee named Vath had gone up with the ele-
vator from the first floor, and as the door did not latch
left it open.  The day was stormy, and the evidence tended
to show that it was so dark in the elevator shaft that ob-
jects could not be observed distinctly.

I.  Appellant contends that the evidence was insuffi-
cient to sustain the verdict on the theory that plaintiff re-
lied solely on his belief that he saw the elevator, but this

1. MASTER AND
SERVANT: ele-
vator accident:
negligence:
evidence.

is not a fair construction of his testimony.
He was asked whether he believed, from the
door being open and the bar removed, that
the elevator was at the floor, and answered
in the affirmative.  Again he explained that one of his
reasons for not turning a light on was that he saw the
door open, with no bar across, and supposed he saw the
frame of the elevator.  From the evidence as a whole the
jury might well have found that in what he did he relied
on the door being open, with the bar raised, together with
what he supposed he saw within.  Had the door been
closed, or the bar in place, in all probability the accident
would not have happened.  But it is said that plaintiff
knew that the door when slammed by those using the
elevator, would sometimes open.  Conceding this, the en-

trance would still have a barrier in the bar, which would have been a warning of danger. As the evidence tended to show he might have relied on the absence of the bar and the open door in connection with such observation as he made, it was for the jury to say from all the circumstances whether he was negligent in stepping into the shaft as he did.

Counsel also contend that no negligence in the matter of lighting was shown, inasmuch as the evidence did not indicate what would be proper lighting. The complaint was not that the elevator and shaft were improperly constructed, as in *Rush v. Murphy,* 135 Iowa, 376, but that the defendant negligently failed to furnish sufficient light in that part of the building to enable employees to see into the shaft as they approached. Whether this consisted in not providing sufficient means of lighting, or prohibiting the use of electric lights for that purpose, is not very material. Nor is it necessary to determine whether, had the latch and bar been in repair, it could be said the lighting was so defective as to constitute negligence. It is enough now to say that, in view of their condition, it was for the jury to determine whether defendant had exercised reasonable care for the protection of its employees against injury which might result from the absence of barriers to the shaft, and the cause was submitted on this theory. See *Gardner v. Waterloo Cream Separator Co.,* 134 Iowa, 6. But it is urged that the negligence was that of Vath in leaving the door open. Possibly it was in part his fault, but had the latch been in repair, the door would have stayed shut, and, moreover, had the bar, which Vath had nothing to do with, been in place, this would have furnished a sufficient barrier against plaintiff's entrance. At the least, whether the injury resulted from negligence attributable to the master or fellow servant was an open question. The evidence was such as to carry the issues to the jury.

II.   A witness had testified in chief that "the elevator was used generally by the employees of the company in going to and from various floors."   In cross-examination he was asked how often Roth had used them. The objection that this was not cross-examination was sustained.   The ruling seems too narrow.   See *Blake v. Powell*, 26 Kan. 326.   But as no time was fixed, it was without prejudice; for, to charge plaintiff with notice, the use must have been made since the existence of the alleged defects.   Rulings on objections to like questions propounded to Ulzig are complained of; but, as the witness testified later that he did not know of Roth using the elevator prior to the accident, there was no prejudice.

2. Same: evidence: scope of cross-examination.

III.   Plaintiff had been at work for defendant fourteen years on contract, being entered into annually.   After the injury he returned to work in about two months, and continued until March 1, 1906.   But he could not perform his duties as well as before, and, as tending to show incapacity, was allowed to state, over objections, that defendant had not entered into a contract as on previous years, nor offered to do so.   How this tended to show incapacity is not apparent.   To testify that the employment ceased was not objectionable, but whether defendant offered to renew the contract was not material.   In cross-examination, however, plaintiff testified that he was not discharged, but quit voluntarily "to go into some kind of patent medicine business," and any prejudice possible was obviated.

3. Same: evidence: materiality: prejudice.

IV.   Plaintiff was able to resume work in two months after the injury, but testified that his arms were not as strong as before, that he suffered pain in them for about an hour every morning after rising, and that he could not pull or pick up or lift things as before, or continue his work as formerly. Though he was receiving $70 per month, he was permitted

4. Same: evidence: damages.

to testify over objection that he had worked for another since March 1, 1906, at less wages, but in service requiring no lifting. The point raised is that no showing was made that he could not have continued in defendant's employment, or hired out to some one else at the same wages. He was not bound to remain until discharged. As soon as he ascertained that he was incapable of properly performing the services exacted by defendant, he had the right, even if it were not his duty, to seek other employment suitable to his condition; and, in order to render the evidence of such employment admissible, it was not essential that it appear that he should have procured the highest wages possible. In the absence of any showing to the contrary the compensation received is presumed to have been the value of the services such as rendered. The ruling was correct.

V. Several of the instructions are criticised but the charge as a whole fairly states the law. In the eighth the jury are told that the happening of the accident alone would not warrant a verdict for plaintiff, but 5. NEGLIGENCE: in order so to find, it must appear that the instructions. "injury was not caused or contributed to by any act or negligence on the part of plaintiff." Of course, if an act of the injured party is not negligent, it will not necessarily defeat recovery, but of this feature of the instruction no complaint is made. The criticism is that by implication it authorizes a verdict against defendant, without a finding that it was negligent. This inference was obviated by several other instructions to the effect that such a finding was essential to recovery.

VI. The fault found with the tenth instruction is that the court, in defining the ordinary risk assumed by the servant and the degree of care exacted of the master for the protection and safety of the servant, 6. SAME. omitted to say that contributory negligence of the latter would defeat recovery. But this paragraph did

not purport to tell the jury the findings essential to recovery, and in another instruction the effect of contributory negligence is clearly stated.

The exceptions to instruction 17, correctly stating the law as to inspection required, are not well taken. It was no part of the employee's duties to replace the broken bar. or keeper, nor does it appear that ma-

7. SAME: servant's duty to repair.

terials were accessible for that purpose. For these reasons the authorities relied on, in which the servant is held to the responsibility of making temporary repairs, are not in point. *Cregan v. Marston,* 126 N. Y. 568 (27 N. E. 952, 22 Am. St. Rep. 854); *Ailes v. Ry.,* 135 Iowa, 154.

The fourteenth instruction is a correct, but not a full, statement of the law. If defendant did not know and could not have learned or observed the defective latch or bar, it was not responsible for their condi-

8. SAME: knowledge of defects.

tion. The omission complained of is the failure to insert "by the exercise of reasonable care" after "observed." The instruction was negative, however, and elsewhere the jury was informed that, unless by such care defendant should have discovered and remedied the defects, there could be no recovery so that no prejudice could have resulted.

The motion in arrest was rightly overruled, and the judgment is *affirmed.*