### Jᴏʜɴ MᴄCᴀɴɴ *vs.* Aᴛʟᴀɴᴛɪᴄ Mɪʟʟs.

PROVIDENCE—JUNE 10, 1898.

Pʀᴇsᴇɴᴛ: Matteson, C. J., Stiness and Tillinghast, JJ.

A master is not an insurer against accident to his servant, and is not called upon so to construct every part of his premises as to prevent the possibility of accident thereon.

If the exercise of ordinary prudence by the servant would have prevented him from taking the risk which resulted in the injury of which he complains, the law can afford him no redress.

An employer may be required to furnish his employees with water to drink; but the mere fact that it is not so furnished does not warrant an employee in leaving a well-lighted room and wandering about the yard in the darkness of a stormy night in search of it, except at his own risk.

A reservoir in the open part of, but not on or near the passageway in, a mill yard, was protected by a chain fence with the exception of a space about five feet long, left open to enable the reservoir to be used for one of the purposes for which it was constructed; the curbing encircling it was crowned with a

---

stone coping which, at the unenclosed place, was so far above the ground level that one would be obliged to step over it before he could walk or fall into the reservoir :—

*Held*, that the reservoir was as well protected as could reasonably be expected, considering the uses to which it was constantly put.

*Held*, further, that it would be unreasonable, as well as unwarranted by any rule of law, to require the owner to so guard every obstruction in his mill yard as to prevent an employee from being injured thereby while walking on a dark night in any part of the yard.

TRESPASS ON THE CASE for negligence in not properly protecting a reservoir in the defendant's mill yard, into which the plaintiff fell and was injured. Heard on defendant's petition for a new trial.

TILLINGHAST, J. This is a petition for a new trial on the ground that the verdict, which was for the plaintiff, is against the law and the evidence. The facts in the case are, briefly, as follows: In November, 1892, the plaintiff, who was in the employ of the defendant corporation, met with an accident by falling into a reservoir, or cistern, in the following manner: He went out of the dye-house, where he was at work, at about 8 o'clock in the evening, for the purpose of getting some water to drink, some one having told him that by going out where directed he could find some in a pail. The testimony of the plaintiff in regard to the matter was this: "I was going to get a drink of water where the man showed me. He told me to go the left, turn the next corner, and that at the next corner there was a pail of water and a dipper in it." The night was very dark and rainy, the ground was slippery, and the plaintiff could not see where he was going. He was unfamiliar with the premises outside of the mill, having been in the defendant's employ only nine days. The door of the mill, out of which he went to find the water, opens onto a concrete passageway which extends along in front of the mill for quite a distance, the easterly end thereof connecting with an area or lane which leads to Atlantic street, this area, together with said passageway, being one of the ways used by the operatives in going to and from the mill. Some distance to the right of said concrete

passageway, going west, is an open circular reservoir or cistern in the mill yard which is used by the defendant in its business. This reservoir is protected by a chain fence, with the exception of a space about five feet in length next to the boiler-house, which is left open in order to enable the reservoir to be used for one of the purposes for which it was constructed, viz., the reception of maple logs which are placed therein to prevent their splitting or checking. There is a stone coping around the reservoir, on top of the wall or curbing thereof, which coping at the place not enclosed by the fence is a few inches above the level of the ground, so that a person, in order to walk into the reservoir at this place, would be obliged to step over the same. The reservoir is about 125 feet distant from the door of the dye-house where plaintiff went out, and nearly 300 feet from the part of the room where he was employed, and is not on or very near said passageway. The plaintiff was never in that part of the yard before, and while wandering around in the dark, in search of water to drink, he fell into this reservoir and received the injuries of which he complains.

We do not think the evidence shows that the defendant corporation was guilty of any negligence in the premises. The reservoir was not on or near the passageway, but was in the open part of the mill yard and was as thoroughly protected as could reasonably be expected, considering the uses to which it was constantly put. It is a matter of common knowledge that mill yards, outside of the necessary passageways over them, are more or less occupied with obstructions to travel, such as wagons, merchandise, piles of lumber, hydrants, reservoirs, or cisterns, and the like. The question which arises, then, is whether every such obstruction must be so guarded and protected as to prevent an employee from being injured thereby while walking on a dark night in any part of the mill yard. We think that to hold the owner to the performance of such a duty would be wholly unreasonable, as well as unwarranted by any rule of law. It is true the master is under obligation to furnish a reasonably safe and convenient place for his servants to work in, and reason-

ably safe appliances for them to use in the performance of their work; but he is not an insurer against accidents, nor is he called upon so to construct every part of his premises as to prevent the possibility of accident thereon. Suppose, for instance, that the plaintiff in the case at bar, instead of having fallen into the reservoir, had come in contact with the pump-house immediately adjacent thereto, and had been injured thereby; could it be reasonably claimed that the defendant would be liable? Clearly not. Suppose, again, that instead of falling into the reservoir the plaintiff had stumbled over the low chain fence which surrounds the reservoir, and had fallen upon the stone coping thereof and been injured, could it be claimed that the fence itself should not have been there without something to protect it? These questions, and many others of a similar character which will readily suggest themselves, show that there would practically be no limit to the liability of an employer if he could legally be held responsible for an accident in a case like the one before us.

In making the comparison aforesaid, we do not overlook the fact that an open and unprotected reservoir or cistern in a mill yard is much more dangerous than the other obstructions mentioned, nor do we wish to be understood as saying that it is not the duty of an employer to furnish some protection therefor. But what we do intend to say is that under the evidence in this case no negligence can properly be attributed to the defendant corporation, it having done all that could be reasonably required of it in the way of protecting the plaintiff from injury by reason of the presence of the cistern.

But, even assuming that we are in error as to the negligence of the defendant, yet it is clear that the plaintiff was guilty of contributory negligence, and hence he cannot maintain this action. He left his room, which was lighted with electric lights, and went out into the thick darkness of a cold and stormy night, and while groping about for a pail of water, in a large mill yard with which he was wholly unfamiliar, under directions, if such they may be called, which were as blind as the night itself, he fell into the cistern or

reservoir in question and was injured. Such conduct, in the absence of any great or pressing necessity to justify the same, must be held, as matter of law, to preclude any recovery.

It is true that it was the duty of the defendant to furnish its employees with water to drink, and if, as the testimony seems to show, there was none at the faucet in the room where the plaintiff worked, it should have been provided elsewhere within easy and safe reach of the workmen. But the mere fact that it was not so furnished was no sufficient excuse to warrant the plaintiff in wandering about the yard in the darkness in search of it, at anyone's risk except his own. Had he applied for water to Mr. Carroll, who was in charge of the room and who was working near him at the time when he went out, his want would probably have been supplied, or he would have been directed to some safe place where he could obtain it. But, instead of doing so, he applied to some one whom he did not know, but who was probably a fellow workman in the mill, and was by him directed as aforesaid. The exercise of ordinary prudence, which we must presume the plaintiff was capable of exercising, especially in view of the fact that he had previously worked in mills for upwards of twenty-six years, would have prevented him from taking the risk which resulted in the serious injury complained of, and, therefore, the law can afford him no redress.

Verdict set aside, and case remitted to the Common Pleas Division with direction to enter judgment for the defendant.

*Franklin P. Owen*, for plaintiff.

*Richard B. Comstock, Rathbone Gardner*, and *Raymond G. Mowry*, for defendant.