COON v. MANLEY. (No. 8646.)

(Court of Civil Appeals of Texas. Ft. Worth. May 21, 1917. Rehearing Denied May 12, 1917.)

TRIAL ⬅⬅127 — MISCONDUCT OF COUNSEL — REFERENCE TO PROTECTION OF PARTY BY INSURANCE.

Where question of defendant automobile driver's negligence and plaintiff's contributory negligence were close, the conduct of plaintiff's counsel in examining witnesses and during argument to jury in pointedly intimating that an insurance company was defending the case held reversible error, though the court charged that such intimations should be disregarded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 275.]

Appeal from District Court, Tarrant County; Mike E. Smith, Special Judge.

Action by H. C. Manley against Elmo Coon. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Kearby & Cooper, of Ft. Worth, for appellant. Simpson & Estes and Chas. T. Rowland, all of Ft. Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment in appellee's favor for the sum of $2,500 as damages for personal injuries caused in an automobile accident. Briefly stated, the accident occurred in the middle of the 2800 block of Hemphill street in the city of Ft. Worth. Hemphill street runs north and south. At the place mentioned, a street car company had placed a switch in its street

car line for the free passage of its street cars. Appellee was a conductor on one of the street cars, and on the occasion in question had operated his car going north and driven in on the switch on the east side of the street, where he stopped his car and awaited the oncoming of a south-bound car. Appellee left his car, crossed the street, and went directly east to get a drink of water in an adjacent yard. The distance between the car and the curb of the street at this point was but some 12 or 15 feet. After securing the drink, appellee, as there is evidence to indicate, hurriedly returned in the direction of the car, crossed the cement walk onto and across the curbing into the street. As he was taking his second step, appellant's automobile collided with him and knocked him down, and he was injured. The time that this occurred was about 9:30 o'clock at night. The evidence does not disclose whether there were any street lights, or to what extent, if any, the car lights illuminated the situation. It does appear, however, that the lights upon appellant's automobile were burning. It further appears that, as appellant approached the street car, he retarded the speed of his automobile, as some of the witnesses testified, to 4 or 5 miles an hour by the time it reached the south end of the street car, and, as he testified, to not exceed 8 miles per hour. Appellant did not blow his horn, testifying that he was looking forward along the street to see if any person appeared coming around the front end of the car. Appellant further testified that he did not see appellee until just as he stepped in front of his auto, whereupon he immediately applied the brakes.

The evidence tends to show that, after the brakes were applied, the car did not go more than 5 or 6 feet forward. The evidence further tended to show that there were some shade trees between the sidewalk and curbing over which appellee proceeded that cast a shadow. The wife of the appellant noticed the appellee as he was approaching the street, but thought that he would stop at the curb. The evidence does not disclose whether she called to the attention of her husband, who was driving the car, the fact of appellee's approach, and appellee, himself, testified that he did not look to see whether the car was approaching. His language on this point is as follows:

"As I was coming back, I never heard any fuss or anything until just as I stepped off the curbing, when an automobile hit me and knocked me to the middle of the car, and threw me on all fours, and then I got up and it hit me again, and knocked me from about the middle to the front vestibule door. * * * I had just stepped off into the street and was starting to make the second step—I never measured the distance I stepped, but I suppose it is 2 or 2½ feet. After I stepped off the curbing, my feet were on the ground, and I was talking a second step, and my weight was on my right leg. * * * I cannot swear whether that automobile had any lights on it to save my life. I did not look to see, because I did not see any car coming, and it hit me so quick I never had time

to look. * * * I never looked to see if any automobile was coming, and I stepped off the sidewalk without looking, and after I took my second step the car hit me. I had no time to look."

Appellant insists under several of his assignments that the evidence shows as a matter of law that appellee was guilty of contributory negligence, and that hence the court should have given a peremptory instruction to the jury. We do not, however, deem it advisable at this time, at least, to pass upon this question, inasmuch as we have concluded that the proceedings upon the trial to be hereinafter noted may have had effect to appellant's prejudice in the deliberations of the jury on the issue of appellee's contributory negligence, as well also as upon the issue of appellant's negligence, which was submitted by the court to the jury. The proceedings referred to may be described substantially, though briefly, as follows:

While appellee, Manley, was testifying as a witness in his own behalf, he was interrogated upon cross-examination by counsel for appellant (Mr. Cooper) in an effort to show that appellee had refused to answer certain questions propounded to him in an ex parte effort to secure his deposition before the trial. Upon re-examination his own counsel asked the following question:

"Did he (the attorney for appellant seeking the deposition) tell you he was the lawyer for Mr. Coon? A. No, sir; that he was the lawyer for the insurance company."

To this answer the appellant by his counsel objected. To this appellee answered, "He represents the insurance company Mr. Coon was insured in." Appellant by his counsel requested that this be excluded from the jury, to which appellee replied, "That is what he said." The court ruled that the question was not one for the jury and instructed the jury not to consider the statement that the notary taking the deposition or swearing him said he was the attorney for the insurance company.

Again, when Dr. Alden Coffey for the plaintiff was on the witness stand, in the presence and hearing of the jury, it was developed, in effect, that Mr. Cooper represented the insurance company. The court again excluded this reference. It further appears that while the defendant Elmo Coon was testifying as a witness in his own behalf, and after he had stated that he had paid the bill of the physician who attended appellee, appellee's counsel asked the following question: "Have you ever been reimbursed for that? A. Not yet." At this point defendant urged an exception to that line of questions. The court remarked, "All right." Counsel for appellee then further asked:

"Have you ever been reimbursed for it? A. Not yet. Q. Are you expecting to be? A. Yes. Q. By whom?"

Counsel for appellee again objected and requested the court to give exception. After

some remarks of the court concluding with the statement that he did not think it was admissible to show that some third person was expected to pay the bill, counsel for appellee stated, "We withdraw the question." Later, while counsel for appellee was making his closing argument to the jury, and while referring to the effort that had been made to take the appellee's deposition, he used the following language, as shown by appellant's bill of exception:

" 'That is the way claim agents and attorneys for corporations do; they get a man in their offices and take an underhand advantage of them, and that is what they were trying to do with Manley.' And to which language defendant at the time duly excepted. And thereupon Mr. Estes stated as follows: 'What I am trying to illustrate is that lawyers and claim agents take advantage of ignorant clients to get at their side of the case, sometimes, and I do not allege there is any corporation in this case.' And thereupon the court made the following ruling: 'Gentlemen of the jury, there is no evidence in any way there was any claim agents for corporations connected with plaintiff in taking his deposition and has no bearing on the case, and you will not consider any statement that counsel has made on that question.' "

As the proceedings referred to have impressed us, they were objectionable and prejudicial. They were duly excepted to at the time and have been presented for our consideration by proper assignments of error. In view of the closeness of the evidence upon the issues of appellant's negligence in the first instance, and of appellee's contributory negligence in the next, the voluntary statements of the plaintiff and of the witness Coffey, as well as of the questions asked of the defendant Coon, and the argument of the counsel, were all calculated to, and very probably did, lead the jury to believe that the defendant Coon in fact had insurance or indemnity agreement of some kind with some bonding or insurance company guaranteeing him against loss because of the accident sued upon, and that in truth and in fact such judgment as might be rendered in this case would have to be paid by the bonding or insurance company. That appellee's counsel desired to convey this impression seems evident from the questions asked and his argument, and that appellee, himself, was prompt in aid was evident from his answers. It is true the court seems to have promptly acted in the endeavor to have excluded from the jury the harmful and irrelevant matter referred to; but the references to the subject were so frequent and pointed, even after repeated rulings of the court, that we do not think appellee can now complain because of the conclusion, which as it seems to us is quite natural, that the vice and harmful effect of the matter objected to were not destroyed by the court's rulings, but, on the contrary, remained and found substantial lodgment in the minds of the jury, and that hence reversible error is presented notwithstanding the court's efforts to correct.

Kirby Lumber Co. v. Youngblood, 192 S. W. 1106, and authorities therein cited.

Other assignments need not be noticed; but for the errors discussed we think the judgment should be reversed, and the cause remanded.