[No. 17210.  *En Banc.*  July 14, 1923.]

FRANK HAUER, *by his Guardian ad Litem August Hauer, Respondent,* v. I. M. CUSCHNER, *doing business as* STANDARD FURNITURE COMPANY, *et al., Appellants.*[1]

MASTER AND SERVANT (44)—NEGLIGENCE OF MASTER—SAFE PLACE—ELEVATORS AND SHAFTS. The owner of a store is negligent in maintaining a defective gate at a freight elevator shaft that will not automatically close, the same being in a dark place where it cannot be readily ascertained that the shaft is open.

SAME (109, 163)—CONTRIBUTORY NEGLIGENCE—SAFE PLACE—ELEVATOR SHAFTS—QUESTION FOR JURY. The contributory negligence of an employee in a store, in falling down a freight elevator shaft, is for the jury, where there was evidence that, unknown to him, the elevator gate was defective and would not automatically close, the place was dark and one could not readily tell that the shaft was open and exposed, and he fell into the shaft while groping his way and feeling for the barrier.

DAMAGES (84)—EXCESSIVE DAMAGES—INJURY TO FOOT IN CONNECTION WITH OTHER INJURIES. A verdict for $6,000 for personal injuries sustained in falling down an elevator shaft is not excessive, where plaintiff received a compound fracture of the heel bone causing enlargement of the joint, so that he could not walk without a cane, or any considerable distance without suffering great pain, and the injury was probably permanent.

EVIDENCE (186)— OPINION EVIDENCE—BODILY CONDITION. In an action for personal injuries, it is not error to permit the plaintiff to testify to the physical fact of the curvature of his spine at a certain place which would be apparent to a non-expert on examination.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered December 3, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained by an employee in falling into an elevator shaft.   Affirmed.

*Graves, Kizer & Graves,* for appellants.

*McCarthy, Edge & Lantz,* for respondents.

[1]Reported in 216 Pac. 833.

BRIDGES, J.—This was a personal injury action, and the defendant has appealed from a judgment against him.

The respondent was injured by falling through a freight elevator shaft, located in a building in Spokane, used by the appellant in connection with his general furniture store. Inasmuch as the respondent claims to have had his fall because the elevator was unguarded by gates or doors, and because the place was insufficiently lighted, it will be necessary for us to undertake to give a description of the place: The store extended from Sprague avenue, on the south, to Riverside avenue, on the north, and had an entrance from each street. The entrances, however, were not on the same level and we are interested only in that from Sprague avenue. The room in which the business was done was approximately thirty-six feet in width, along Sprague avenue. Its depth is not shown exactly but was materially more than its width. There was a wooden partition running north and south through a part of the room and located near the center thereof. That portion of the room east of the partition forms the sales department, and for the most part that portion which is on the west side of the partition serves the shipping department. The freight elevator was in this portion of the room. Close to the west wall on the Sprague avenue, or south side, of the room is an entrance at which are two doors which have large glasses in them, and are always kept closed and can only be opened from the inside. They open into a hall which is some ten feet in length. At the other, or north end, of the hall are two other wooden doors without glass and they open on to the south side of the elevator shaft. On the north side of the shaft and immediately adjoining it are two swinging doors or

gates, one hinging upon the other. The purpose of these gates was to protect persons from falling into the shaft. The hall above mentioned and the elevator shaft are enclosed on the westerly side by the west wall of the building and on the easterly side by a high wooden partition. Immediately adjoining and to the east of the entrance we have described are large plate glass windows and the main entrance into the sales room.

The respondent first commenced to work for the appellant the day before his injury. Before that occurrence, he had been on the various floors of the place, and had been through the various doors leading to the freight elevator, and had once or twice been on the elevator, but had not himself operated it, somebody always doing that for him. His employment was to operate a truck delivering furniture and other articles. On the morning of the day of his injury, he had taken some matting or other floor covering from the building, and had delivered the major portion of it to some place in the city and had returned to the store with what had not been used. He stopped his truck at the west, or elevator, entrance. He knew that the doors. of this entrance were closed and could only be opened from the inside, and could be reached only by going into the main entrance, and thus through a part of the main store and then into the shipping room and around the wooden partition to the north entrance of the elevator, across the elevator and the hall to the south of it, to the front door. He undertook to follow this course and fell into the shaft at the north entrance thereof.

Respondent and some of his witnesses testified that the day was cloudy and somewhat dark; that the wooden doors guarding the south entrance to the ele-

vator were closed, or substantially so; that no artificial lights were burning, and that the shipping room and the approach to the elevator were dark, and that one could not readily tell whether the elevator was on the first floor or was higher up in the building, thus leaving the shaft open.

He further introduced evidence to the effect that the doors or gates guarding the north entrance to the elevator shaft, the one which on this particular occasion he was attempting to enter, were open and would not automatically close, although he did not know those facts. In describing how he entered the room from the outside and sought the elevator, he said:

"Well, I walked down from the corner there and started to grope with my feet and hands if there was a barrier there, expected to find some bar or something and groped along there and took a step or two too far and before I could catch myself I fell down the shaft. Q. But you knew the elevator was right at that point; you knew that was the place for it. A. Yes, but I could not see whether it was there. Q. You knew it was right in front of you; it had to be there. A. Yes, sir. Q. Either the elevator platform had to be there or the elevator opening was there; you knew that, didn't you. A. I did not know just whether—I felt around and thought it was there. I was groping because I could not just see. I was kind of feeling my way, and before I could catch myself I was down the shaft."

The testimony further showed that, sometime before the accident, the elevator inspector of the city had notified the appellant that the north gate to the elevator was out of repair and dangerous and must be fixed. No repairs were ever made until after the respondent was hurt.

We do not understand that the appellant seriously contends that there was insufficient evidence to go to the jury on the question of his negligence. At any

rate, we have no doubt on this question. But it is elaborately argued that the physical conditions conclusively show that the place was so well lighted as that, had the respondent been using ordinary care, he must have seen that that the northerly door or gate leading into the elevator shaft was open and that the elevator itself was not at that floor; and that, because of these things, he was guilty of contributory negligence as a matter of law.

We cannot follow appellant in this contention. We have often held that positive physical facts must control and even make worthless the testimony of witnesses contradicting them. We will not listen to a witness say that he looked for an object and did not see it, when the physical facts show it was close by and in plain view and that any person who looked must have seen. But that doctrine is not applicable, or at least controlling, here. There was ample testimony to show that the gate leading into the elevator on the north side was defectively constructed and maintained and was generally left open, and that a step through it would be to fall down the shaft, and that the respondent did not know that the shaft was left in this dangerous condition. There was also testimony showing that that portion of the room where he was entering the elevator shaft was so dark that one exercising reasonable care might well not be able to tell that the gate was open or that the elevator shaft was unoccupied by the elevator. There was also testimony to show that, while much light might have gone through the windows and doors of the front entrance to the hallway, yet there was also testimony from which the jury had a right to believe that the wooden doors guarding the southerly side of the elevator shaft were closed, or so nearly closed as to cut off much or all of ·

the light that might come from the glass entrance doors. There was testimony to show that no artificial lights were burning in the shipping room, and that on medium dark days it was not only customary, but quite necessary, that such lights should be burning in order to make the place reasonably fit to work in. It was also shown that respondent had but just entered the building from the outside and his eyes had not yet become accustomed to the dimness of the room.

Under these circumstances, it was for the jury to determine whether the respondent was guilty of negligence and the court did not err in submitting that matter to the jury.

It is next contended that the verdict, which was for $6,000 is excessive. The testimony showed that, as a result of the fall, the respondent received a comminuted fracture of the oscalcus, which, in common language, is the heel bone. This was a serious injury and caused an enlargement of the joint. He was for forty-three days in the hospital, and thereafter for several months was required to walk on crutches, and at the time of the trial he was unable to walk without a cane or to walk any considerable distance with one without his foot causing him pain. A part of the medical testimony tended to show that this injury was probably permanent, that is, that during the rest of his life the respondent would at times suffer more or less from the injury. There was also testimony that the respondent was severely shaken and bruised and that his back was injured to some extent.

Under this showing, we cannot say that the verdict is excessive.

Over appellant's objection, the respondent was allowed to testify as follows:

"Q. Have you noticed whether your backbone, or spine, is straight up and down or curved a bit. A. It

seems to be a little kind of curved in like that, it is not straight up and down."

He then proceded to testify as to the amount of the curvature in his spine according to his estimate. It may be that the respondent, not being a medical expert, could not testify as to how an injury to his spine might affect his health or future physical condition, but there is no reason why he could not testify as to physical facts and this is all that he undertook to do. He merely testified that his spine at a certain place was curved. A physical examination made by himself or any other non-expert could disclose this, and we see no objection whatever to the testimony. The judgment is affirmed.

All concur.