## F. W. WOOLWORTH CO. v. DAVIS.

### No. 187.

Circuit Court of Appeals, Tenth Circuit.

April 30, 1930.

On Motion to Modify Judgment, June 6, 1930.

344

Richard K. Bridges, of Tulsa, Okl. (H. W. Randolph, John A. Haver, and Randolph Shirk, all of Tulsa, Okl., on the brief), for appellant.

Charles W. Pennel, of Bartlesville, Okl. (A. O. Harrison, of Bartlesville, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellee, plaintiff below, recovered a judgment for injuries received from a fall down an elevator shaft in his employer's place of business. Several errors are assigned.

I. It is claimed that there was error in the overruling of defendant's special plea to the jurisdiction, which presented the proposition that the injury was compensable only under the Workmen's Compensation Laws of the state of Oklahoma. The state compensation statute provides that the remedies therein provided for shall be exclusive in cases where the statute applies. The statute provides:

"Compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to-wit: * * * waterworks, reduction works, elevators, dredges, smelters, powder works, * * * operation and repair of elevators in office buildings * * *." C. O. S. 1921, § 7283.

The plaintiff was an employee of one of the Woolworth retail stores; a part of his duties was to operate an elevator which was used by the store exclusively for transporting freight between the floors of that part of the building occupied and used by the store. The third floor of the building consisted of living apartments; the first and second floors were occupied by the defendant's store, except two front offices which were not connected with, nor occupied by, the defendant's store.

The Supreme Court of Oklahoma has not been called upon to interpret this statute as far as it refers to "elevators." It seems clear to us that the word "elevators" in the sentence "waterworks, reduction works, *elevators,* dredges, smelters, powder works" refers to grain elevators, or other "elevator" businesses, and not to the operation of an elevator in a building; if "elevators" referred to such vehicles, it would include passenger and freight elevators in mercantile, manufacturing, and office buildings. Such interpretation would render meaningless the subsequent limited sentence, "operation and repair of elevators in office buildings." The Supreme Court of Washington has construed a similar statute accordingly. Guerrieri v. Industrial Ins. Commission, 84 Wash. 266, 146 P. 608.

Nor was the plaintiff engaged in the "operation and repair of elevators in office buildings," for the simple reason that this was not an "office building"; it was a retail store, and the presence of the disconnected office on the second floor does not change its character. The special plea to the jurisdiction was properly overruled.

II. Error is assigned for failure to instruct a verdict because of the unreasonableness of plaintiff's version of the accident, and because plaintiff failed to show that his injuries were the result of his fall. Plaintiff testified that it was his duty to open a window on the far side of the elevator shaft on the second floor. Because the gate guarding the shaft was up, he assumed the elevator was at the floor, and started to walk across the elevator to open the window; the elevator was not there, and he fell about eighteen feet, striking a girder about two-thirds of the way down. There was evidence that his body fell out of the shaft, his head toppling back onto the floor of the elevator; that the

floor of the elevator was covered with cartons, glassware, and other fragile material, which was not broken. There was also evidence that immediately after the accident, the window in the elevator shaft, which plaintiff started to open, was open. Plaintiff himself testified that often when he started to open the window when the elevator was at the ground floor he would swing or muscle himself across the shaft and open the window, to save himself the trouble of walking down to bring the elevator up. Defendant's argument on this point is not entirely clear, but we take it that its position is that the window being open immediately after the accident, the plaintiff must have opened it; that, if plaintiff had stepped into the elevator shaft, as he says, his body would have been inside the shaft and would have broken the glassware on the floor of the elevator; that, since windows do not open themselves, and falling bodies do not follow the arc of a semicircle, the evidence shows beyond dispute that plaintiff swung across the shaft, opened the window, slipped as he swung back, which would project his body out of the shaft and into the position in which it was found. While this theory does fit snugly into the admitted facts, and does accord with the fact that ordinarily men do not step blindly into open elevator shafts, and while such evidence would fully justify a verdict for the defendant, we cannot say that plaintiff's version is impossible, or that the jury could not believe him. Some one else may have opened the window; the girder may have so deflected his fall as to throw his body out of the shaft. The jury's finding concludes this question.

And so of the claim that his present injury—a paralyzed right leg—was not the result of the accident. Immediately after the fall, the doctors discovered no such injury; several days under observation in the hospital developed none. Shortly after his discharge from the hospital he was afflicted with appendicitis; after appendectomy, the motor, but not the sensory, nerve of the right leg was paralyzed. The doctors disagreed as to whether the injury could be traced back to the fall. The plaintiff testified that, upon manipulation immediately after the fall, the right leg pained him. This again was for the jury.

III. Error is assigned because the plaintiff, in his testimony, got before the jury the suggestion that the defendant carried insurance against such accidents. The testimony complained of was volunteered. Plaintiff's counsel argues that such voluntary statements are unavoidable, and that there was no motion to withdraw them from the jury's consideration, and no motion to discharge the jury. Where irrelevant and prejudicial matters are injected into a jury trial, a formal withdrawal ordinarily does no good; an objection, in fact, ordinarily serves but for emphasis. If counsel should inquire whether the defendant is insured, or by other means implant the suggestion with the jury, ordinarily the harm has been done, although circumstances may exist where the court, by vigorous effort, may undo the damage. There is conflict in the decisions of the courts as to whether the dragging in of such irrelevant matters is reversible error. The following cases hold, or state, that it is: Yoast v. Sims, 122 Okl. 200, 253 P. 504; Birch v. Abercrombie, 74 Wash. 486, 133 P. 1020, 50 L. R. A. (N. S.) 59; Coe v. Van Why, 33 Colo. 315, 80 P. 894, 3 Ann. Cas. 552; Coon v. Manley (Tex. Civ. App.) 196 S. W. 606; Martin v. Lilly, 188 Ind. 139, 121 N. E. 443; Sawyer v. Arnold Shoe Co., 90 Me. 369, 38 A. 333; Kerr v. Brass Mfg. Co., 155 Mich. 191, 118 N. W. 925; Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494; Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S. W. 623; Tremblay v. Harnden, 162 Mass. 383, 38 N. E. 972; Walters v. Appalachian Power Co., 75 W. Va. 676, 84 S. E. 617; Hollis v. United States Glass Co., 220 Pa. 49, 69 A. 55; Standridge v. Martin, 203 Ala. 486, 84 So. 266; Stanley v. Whiteville Lbr. Co., 184 N. C. 302, 114 S. E. 385. To the contrary, see Robinson v. Woolworth Co., 80 Mont. 431, 261 P. 253; Howard v. Marshall Motor Co., 106 Kan. 775, 190 P. 11; Jessup v. Davis, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403; Wells v. Morrison, 121 Or. 604, 256 P. 641, where the facts came before the jury incidentally, but contrary if willfully; Tuohy v. Columbia Steel Co., 61 Or. 527, 122 P. 36. The entire subject has been elaborately treated in a note entitled "Informing Jury of Liability Insurance," in 56 A. L. R. 1418.

The Fourth and Sixth circuits have held such evidence is irrelevant. In Stewart & Co. v. Newby, 266 F. 287, 295, the Court of Appeals of the Fourth circuit, after commenting on the prejudicial effect of getting before the jury the fact that any judgment will be paid by some impersonal insurance company not in court, and saying that "the removal of the fly does not restore an appetite for the food into which it has fallen," held:

"The authorities are overwhelming that such evidence is inadmissible, that it should

be promptly excluded, and that the striking out of the testimony when once admitted does not obviate the necessity for a new trial, if the evidence is so impressive that its effect is not removed by subsequent withdrawal or instruction to disregard."

The Sixth circuit has held that the trial court has a large discretion as to the propriety and good faith of questions propounded jurors upon their voir dire, and has a large responsibility in seeing to it that the jury tries the issues before them, and no other. New Ætna Cement Co. v. Hatt (C. C. A.) 231 F. 611.

The Supreme Court, in no uncertain tones, has recently spoken of the imperative necessity of keeping trials of fact in the United States courts upon a high plane; of making of them in fact a search for the truth, and not an arena for the contest of shrewd lawyers playing upon the passions and prejudices of juries. After a verdict below on ample evidence, and an affirmance by the Court of Appeals, the Supreme Court reversed a personal injury case because the plaintiff's lawyer had referred in his argument to "this eastern railroad," "a claim-agent defense," and other irrelevant but prejudicial matters. The court, speaking through Mr. Justice Stone, said:

"That the quoted remarks of respondents' counsel so plainly tended to excite prejudice as to be ground for reversal, is, we think, not open to argument. The judgments must be reversed, with instructions to grant a new trial. Respondents urge that the objections were not sufficiently specific to justify a reversal. But a trial in court is never, as respondents in their brief argue this one was, 'purely a private controversy * * * of no importance to the public.' The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict, uninfluenced by the appeals of counsel to passion or prejudice. See Union Pac. Ry. Co. v. Field (C. C. A.) 137 F. 14, 15; Brown v. Swineford, 44 Wis. 282, 293, 28 Am. Rep. 582. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error. Brasfield v. United States, 272 U. S. 448, 450, 47 S. Ct. 135, 71 L. Ed. 345."

N. Y. Central R. Co. v. Johnson, 279 U. S. 310, 318, 49 S. Ct. 300, 303, 73 L. Ed. 706.

Since we have concluded that the cause should be reversed on other grounds, it is sufficient here to say that the trial of cases, particularly before juries, must be confined to the issues presented; atmosphere and prejudice have no part in ascertaining the truth; the burden rests primarily on counsel to see to it that prejudicial matters do not creep into the case; and a serious responsibility rests upon the trial court to see that justice between man and man is not deflected by irrelevant matters.

IV. Error is assigned because the court declined to instruct a verdict for the defendant on the ground that the evidence conclusively showed that plaintiff was guilty of contributory negligence.

The appellee first answers that the Oklahoma Constitution (article 23, § 6) provides that "the defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury." Conceding, for present purposes, that a state may abolish the defense of contributory negligence, entirely or pro tanto, it does not follow that a state has the right to prescribe the procedure of courts of the United States. No state has the power to prescribe the duties of the judge and jurors in courts of the United States. That has been conclusively determined by the Supreme Court of the United States, in Barrett v. Virginian Ry. Co., 250 U. S. 473, 476, 39 S. Ct. 540, 541, 63 L. Ed. 1092. In that case, after stating the rule of the United States courts that it is the duty of the court to instruct a verdict where the state of the evidence demands it, the court said: "And this rule is not subject to modification by state statutes or Constitutions."

In St. Louis, I. M. & S. Railway Co. v. Vickers, 122 U. S. 360, 7 S. Ct. 1216, 30 L. Ed. 1161, it was held that a state constitution could not interfere with the right of a Federal Judge to charge the jury as to matters of fact. In Henrietta Mills v. Rutherford County, 50 S. Ct. 270, 74 L. Ed. 737, it was held that a state statute could not authorize a United States Court, sitting in equity, to enjoin a tax where there was an adequate remedy at law.

That the verdict of a jury, supported by substantial evidence, cannot be reviewed is so well settled that citation of any authority is superfluous. Whether a plaintiff

is guilty of contributory negligence is like any other issue of fact, for the determination of the jury if the evidence is conflicting. Sandri v. Byram (6 C. C. A.) 30 F.(2d) 784; List v. New York Central R. Co. (1 C. C. A.) 3 F.(2d) 434; Federal Mining & Smelting Co. v. Hodge (9 C. C. A.) 213 F. 605; Ramsdell v. Goumis (2 C. C. A.) 228 F. 864; Slentz v. Western Bank Note & Engraving Co. (3 C. C. A.) 180 F. 389; American Smelting & Refining Co. v. Mc-Gee (8 C. C. A.) 157 F. 69. It is equally well settled that "in every case, it is the duty of the judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different finding." Baltimore & Ohio R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 171, 69 L. Ed. 419. Mr. Justice Butler gathers in a footnote to the above case a great many decisions of the Supreme Court in support of his statement of the law. Here again contributory negligence is like any other issue of fact, and, if all the substantial evidence with its legitimate inferences, discloses contributory negligence of the plaintiff, it is the duty of the court to instruct a verdict accordingly. Southern Pacific Co. v. Pool, 160 U. S. 438, 16 S. Ct. 338, 40 L. Ed. 485; Southern Pacific Co. v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391; Miller v. Canadian Northern Ry. Co. (8 C. C. A.) 281 F. 664, opinion by Judge Walter H. Sanborn.

▮ In the United States court, the rule is that there must be substantial evidence, as distinguished from a scintilla or modicum of evidence, to justify submission of a case to a jury. In Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 303, 69 L. Ed. 597, the court, speaking through Mr. Justice Van Devanter, said:

"The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others. Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780; Bowditch v. Boston, 101 U. S. 16, 18, 25 L. Ed. 980; Anderson County Commissioners v. Beal, 113 U. S. 227, 241, 5 S. Ct. 433, 28 L. Ed. 966; Delaware, etc., R. R. Co. v. Converse, 139 U. S. 469, 472, 11 S. Ct. 569, 25 L. Ed. 213."

▮ The rule is likewise settled that, "when the testimony of a witness is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it." American Car & Foundry Co. v. Kindermann (8 C. C. A.) 216 F. 499, 502; Missouri, K. & T. Ry. Co. v. Collier (8 C. C. A.) 157 F. 347, cert. denied 209 U. S. 545, 28 S. Ct. 571, 52 L. Ed. 920. Cases from many jurisdictions are gathered in a note in 8 A. L. R. 798, supporting the proposition that uncontradicted evidence which is contrary to physical facts should be disregarded. Judgments cannot and should not stand if they are entered upon testimony that cannot be true.

▮ If the facts are not in dispute, standards of conduct are for the court to determine, and not for the jury. B. & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; Baltimore & Ohio R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; Southern Pac. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335; Southern Pacific Co. v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391.

Disregarding all testimony conflicting with that of plaintiff and his witnesses, we find that the injury occurred about 7:30 in the morning of September 27. He had been employed at defendant's store for two or three years, and was familiar with his surroundings. A freight elevator was in the northeast corner of the building, which was installed with an automatic gate which was up when the elevator was at the floor, and down when it was not there. The regular operators of the elevators were the plaintiff and one Franklin, the manager of the store, and plaintiff's immediate superintendent. The automatic device operating the gate on the second floor became out of order more than three months before the injury, and plaintiff knew it. It could have easily been repaired, and it is conceded that defendant was negligent in not repairing it. The gate or door could be lowered by hand. Franklin told plaintiff that, if the operators of the elevator "were always careful and shut the door it would be all right." Signs were put up advising operators to shut the door. During the three months, plaintiff never knew of an occasion when the instructions were

not obeyed. The night before the accident, Franklin moved the elevator and forgot to lower the gate. The petition alleges that the corner where the elevator was located was poorly lighted; the plaintiff testified that "the light was not good in the corner by the elevator * * * it was not as light in that corner as it could have been * * * if you went right to it [the elevator], and up to it you could see." There was an electric light at the corner, but it was not lighted, and plaintiff did not turn it on. It was, of course, broad daylight, although the record is silent as to the weather. The walls surrounding the elevator were white; there was a full-size double window, unfrosted, in outside wall of the elevator shaft. There was a big window in the girls' room, across from the shaft, and the door to that room was open.

On the morning of the accident, the elevator was at the ground floor; the plaintiff walked up the stairs, passed by the elevator shaft and noticed the gate was up, put some tennis shoes on a table, opened a window, came back and stepped into the elevator shaft without looking, and was severely injured. Undoubtedly it was light enough in and about the elevator for him to get around without inconvenience, for he did so without turning on available electric lights. The physical facts make it clear that plaintiff is correct when he says he could have seen the elevator was not there if he had looked when he was "right to it"; that is, before he stepped into the shaft.

The question presented by the assignment of error is whether, under the facts stated, the court should have directed a verdict for the defendant on the ground that the negligence of the plaintiff, in not looking before he stepped, contributed to his injury.

It is frequently stated that the authorities are in conflict as to whether it is contributory negligence, as a matter of law, to step into an open elevator shaft or pit. An examination of the cases indicates that the conflict may be more apparent than real. In the following cases such an act was held to be contributory negligence, as a matter of law. Among these cases are situations where it was light, where it was dark, and where it was in between. Among them are cases where the servant had reason to believe the elevator was where he supposed it to be. Greenwell v. Washington Market Company, 10 Mackey (21 D. C.) 298; Darrow v. The Fair, 118 Ill. App. 665; McDonnell v. Illinois Central R. Co., 105 Iowa, 459, 75 N. W. 336; Meister v. Alber, 85 Md. 72, 36 A. 360; Taylor v. Carew Mfg. Co., 143 Mass. 470, 10 N. E. 308; Caniff v. Blanchard Navigating Co., 66 Mich. 638, 33 N. W. 744, 11 Am. St. Rep. 541; Page v. New York Realty Co., 59 Mont. 305, 196 P. 871; Maxwell v. Thomas, 31 App. Div. 546, 52 N. Y. S. 30; Malaverneri v. Turner Construction Co., 141 App. Div. 360, 126 N. Y. S. 303; Williams v. Trecartin, 166 App. Div. 745, 152 N. Y. S. 340; Hurley v. Steel Co., 186 Pa. St. 187, 40 A. 321; Cutler v. Kolb Bakery Co., 273 Pa. St. 59, 116 A. 518; McCann v. Atlantic Mills, 20 R. I. 566, 40 A. 500; Leahy v. United States Cotton Co., 28 R. I. 252, 66 A. 572; M., K. & T. Ry. of Texas v. Barnes, 37 Tex. Civ. App. 645, 85 S. W. 1006; Jones v. Moran Brothers Co., 45 Wash. 391, 88 P. 626.

In the following cases the question of contributory negligence was held to be for the jury. In some of them the plaintiff did not intentionally step into the shaft; in others the master had at the time of the injury, told the servant the elevator was at the floor, a statement of a present fact, quite unlike the vague assurance given months before, relied on in this case; in others, a barrier had been negligently removed immediately prior to the accident. Herren v. Waterworks Co. (Ala. Sup.) 40 So. 55; Annen v. McLaughlin & Co., 189 Ill. App. 261; Hopkinson v. Knapp & Spalding Co., 92 Iowa, 328, 60 N. W. 653; Roth v. Buettell Brothers Co., 142 Iowa, 212, 119 N. W. 166; Wolf v. Devitt, 83 App. Div. 42, 82 N. Y. S. 189; Martin v. Cornell, 136 App. Div. 585, 121 N. Y. S. 119; Hauer v. Cuschner, 125 Wash. 555, 216 P. 833; Perras v. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179, 9 Am. Neg. Rep. 328; Case Threshing Machine Co. v. Buick Motor Co. (8 C. C. A.) 39 F.(2d) 305.

The United States courts have uniformly held that one who is familiar with the vessel and who steps into an open hatch of a ship cannot recover. The Sir Garnet Wolseley (D. C.) 41 F. 896; The Jersey City (D. C.) 46 F. 134; The Louisiana (5 C. C. A.) 74 F. 748; The Saratoga (2 C. C. A.) 94 F. 221; The Kongosan Maru (9 C. C. A.) 292 F. 801. The Seventh circuit, in Oleksy v. Midland Linseed Co. (C. C. A.) 168 F. 896, held that a servant assumed the risk of injury, where he fell down an elevator shaft, when the elevator had been moved without notice to him. The Eighth circuit has held than a man cannot recover, because of his own negligence, who falls into an unguarded pit while walking in the dark. Northern

Pacific R. Co. v. Post (C. C. A.) 170 F. 943. And the same court in De Honey v. Harding, 300 F. 696, 699, held one could not recover who fell down an open stairway without looking.

We conclude that the general and correct rule is, at least in the absence of any present assurance of safety, a plaintiff may not recover if the use of his senses, in the ordinary way, would have prevented the injury.

To avoid the result of this well-settled rule of law, plaintiff argues that the jury found that there was negligence on the part of Franklin in leaving the gate up the night before the accident. That finding may be accepted, but it has no bearing whatever on the error assigned. Contributory negligence is a bar to recovery in and of itself. Plaintiff further undertakes to avoid the conclusion by claiming that, by the conduct of the master, the plaintiff had a right to assume that the elevator was at the floor and to rely upon this assurance of safety. The facts are that for three months the gate had not worked; the manager had told plaintiff that, if they "were always careful and shut the door it would be all right." Plaintiff testified that he had never known any employee to be careless in this respect. The plaintiff knew that, if the gate was up, the elevator would be there unless some one forgot, which was always within the range of possibility. What this "assurance" really amounts to is this: The master told plaintiff what the plaintiff must have known, and that was that if the operators remembered to pull the gate down by hand, the shaft would be guarded. The same common sense must have told the plaintiff that an operator might forget, and, if he did, the shaft would not be guarded. But assuming, without deciding, that the finding of the jury amounts to a finding that the master had given an assurance of safety, and that a custom had grown up upon which plaintiff might rely, there still is to be determined what care, if any, the plaintiff is bound to use. What is reasonable care, for plaintiff and defendant alike, is determined in the light of attendant circumstances. The circumstances of the gate being up must be considered; that it has a bearing on the care required of plaintiff does not admit of doubt. Undoubtedly the plaintiff, in working about or walking about this shaft, with the gate up, was not required to use the same degree of care he would have been required to use if he had known the shaft was open.

Giving plaintiff the benefit of all the assumptions that may properly be drawn from the verdict of the jury, we then confront the precise question, Does this circumstance relieve him from the duty of exercising any care? May he rely so implicitly on an assurance given months before, which in substance was a statement that if no one forgot to lower the gate it would be safe, that he was justified in walking blindly into the shaft without even looking where he stepped?

Counsel for plaintiff presses upon us the analogy between this case, with the implied invitation to enter the elevator, and the case of the driver who approaches a railroad crossing equipped with crossing gates which, when up, impliedly invite the driver to cross the tracks. The analogy is a close one. Several of the circuits have dealt with this situation. Canadian Pac. Ry. Co. v. Slayton (2 C. C. A.) 29 F.(2d) 687, 689; Baltimore & O. R. Co. v. Shaw (3 C. C. A.) 35 F.(2d) 410; Erie R. Co. v. Schultz (6 C. C. A.) 183 F. 673, 675; Pennsylvania Co. v. White (6 C. C. A.) 242 F. 437; Lang v. Byram (8 C. C. A.) 35 F.(2d) 489; Vascacillas v. Southern Pac. Co. (9 C. C. A.) 247 F. 8.

Without presently passing upon the rights of the parties in such a situation, it is enough to say that even those cases which support most strongly plaintiff's position have uniformly held that such an implied invitation serves only to modify the degree of care required of the traveler, and does not exempt him from the exercise of any care. For example, in Erie R. Co. v. Schultz, supra, it was held that a traveler approaching opened gates was not under the same absolute duty to stop, look and listen as he would have been under if there were no gates, but that he discharges his legal duty if "he uses his senses of sight and hearing" as an ordinary person would and should. And in Canadian Pac. Ry. Co. v. Slayton, supra, the court adds to its statement of the rule, "but, of course, he still has a duty of doing what a prudent man would do under like circumstances." Judge Taft, in Blount v. Grand Trunk Ry. Co. (6 C. C. A.) 61 F. 375, 378, fully recognizing that the raised gates were an invitation which modified the duty of the traveler, nevertheless held that a verdict should have been directed for the defendant where it appeared that, if he had looked, he would not have been injured. He said:

"The right to rely on the action of the railway company's employee in lowering the gate is not absolute. State v. Boston & M.

R. Co., 80 Me. 430–444, 15 A. 36. If it were, then a man would be justified in walking up to and over a railway crossing with closed eyes and stopped ears whenever the gate is not down to obstruct his passage."

An examination of the cases shows conclusively that the doctrine of those courts which hold that open gates are an invitation to cross the tracks is that, while the traveler need not stop, or take unusual precautions, he is still required to use his senses; he cannot drive into a train, or cross with an approaching train in full view, and recover. This is in accord with the general rule stated in 39 C. J. 831: "In any event assurances of safety by the master will not relieve the servant from exercising due care to avoid injury from defects in his place of work." And see, to same effect, La Batt, Master & Servant, vol. I, § 446 et seq.

We are not dealing here with a conflict in evidence; we are dealing with a standard of conduct. We are satisfied that Judge Phillips announced the prevailing rule of the courts, and the sound rule for society, when he said in De Honey v. Harding, supra:

"The law requires a person to make reasonable use of his faculties to observe and avoid danger, and conclusively presumes that he knows what he would have known, had he made ordinary use of his senses. * * * It seems clear that plaintiff simply hurried out of her room, and, without paying any attention to where she was going and without using her senses, walked into this darkened stairway. We cannot escape the conclusion that plaintiff, as a matter of law, was guilty of negligence which contributed to the proximate cause of the injuries for which she seeks recovery."

■ The evidence indisputably shows that the plaintiff did just this thing; he hurried into this elevator shaft "without paying any attention to where he was going and without using his senses." Conceding that the circumstances modified the degree of care required of him, it did not relieve him from the exercise of any care; the exercise of the slightest attention to where he was stepping would have avoided the accident. The parental precept of unnumbered generations, "Look where you are going," is a sound standard of conduct, which has become crystallized into a rule of law which compels a reversal of this case.

The motion for an instructed verdict should have been sustained. The cause will be reversed and remanded for a new trial.

Reversed.

#### On Motion to Modify Judgment.

■ In the opinion filed in this case, it was held that the trial court should have directed a verdict for the defendant-appellant on the ground that the plaintiff's evidence disclosed that his negligence contributed to the injury for which he sought recovery. The order was that the cause be reversed and remanded for a new trial. The appellant has now filed its motion to modify such order by directing the lower court to render judgment in its favor.

In support of such motion it is argued that the plaintiff has had a fair trial; that the record discloses that there were no witnesses to the accident, excepting the plaintiff; that he has told his own version of the accident; and that, under the law announced in the opinion in this case, the plaintiff can never recover unless his testimony is different upon a second trial; that a new trial can only serve to afford the plaintiff an opportunity to change his testimony, and to put the defendant to unnecessary expense.

In Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, it was held that a Circuit Court of Appeals was without power to determine the facts in an action at common law, or to direct a judgment on the evidence, or lack of evidence. Conceding all that appellant claims as to the state of the record, it is clear that its motion must be denied.

Motion denied.