Jerome BLUM, Marvin Blum, Bennett Blum, Harry Jacobs, Charles Levy and H. Albert Young, a partnership trading under the name of Brodney Associates, owners of "1401", E. J. Frankel, Zerline Frankel, William J. Wolf, Ella Wolf and Lillian Margolin, a partnership trading under the name of "The Mayfair", E. J. Frankel, Benjamin Frankel, Leonard Frankel, William Frankel, David Sapp and Abe Perlman, a partnership trading under the name of "The Dorset", Plaza, Inc., a corporation of the State of Delaware, trading as "The Plaza", Kevy Kaiserman, Hortense Kaiserman, Kenneth Kaiserman, Ronald Kaiserman and Constance Kaiserman, a partnership trading as "Devon Apartments",

v.

The CITY OF WILMINGTON, a municipal corporation of the State of Delaware.

Superior Court of Delaware, New Castle.

Nov. 17, 1970.

Ben T. Castle, of Young, Conaway, Stargatt & Taylor, Wilmington, for "1401".

Andrew G. T. Moore, II, of Killoran & Van Brunt, Wilmington, for "The Plaza".

Albert L. Simon, Wilmington, for "The Mayfair" and "The Dorset".

William E. Taylor, of Taylor & Lindh, Wilmington, for "Devon Apartments".

Clement C. Wood, Asst. City Sol., Wilmington, for defendant, City of Wilmington.

OPINION

CHRISTIE, Judge.

The plaintiffs each operate large high-rise apartment houses in Wilmington. These apartment houses are located in districts zoned for apartments.

The plaintiffs have been paying annual municipal license taxes for each apartment house pursuant to Section 35–39 of the Code of the City of Wilmington, which provides as follows:

"*Section 35–39. Dwelling units.*

The license fee specified by Section 35–53 shall be paid per year by the owner, operator or lessor of three or more dwelling units. For the purposes of this section, a 'dwelling unit' shall mean any room or group of rooms located within one or more buildings and forming a single habitable unit with facilities which are used or intended to be used for living, sleeping, cooking and eating. In determining the number of dwelling units under this provision, a dwelling unit occupied by the licensee shall not be included."

Each of the apartment houses also contains a number of offices, many of which are rented by physicians and dentists. The office space in the various buildings ranges from four to six percent of the total square footage in each apartment house. The offices represent three and a half to slightly over six percent of the total number of units in each apartment house. The City of Wilmigton is now endeavoring to impose, in addition to the apartment license tax, an "office building" license tax pursuant to Section 35–37 of the Code, which reads as follows:

"*Section 35–37. Office buildings.*

Persons owning or operating office buildings engaged in the business of leasing office space shall pay, per year, the license fee as required by Section 35–53; provided, that this provision shall not apply to any space leased by any office building in which there are less than two thousand five hundred square feet."

The chapter of the City Code which governs the issue here at stake is captioned "Licenses Generally". In this chapter the taxes collected for licenses are generally referred to as "license fees".

The specific provisions, as to the amount of such fees, read in pertinent part as follows:

"The following rates shall be annual rates except as otherwise specifically provided:

\* \* \* \* \* \*

Dwelling units (3 or more) ..... 100.00

\* \* \* \* \* \*

Office buildings, 2500 square feet or more ................ 200.00" (Section 35–53)

A principal source of tax revenue from all buildings located in Wilmington are the City and County real estate taxes and the school taxes. These taxes are based upon the assessed value of the buildings and are not directly related to the use made of the buildings or the license fees which may be collected on account of the uses to which the buildings are put.

The plaintiffs have brought this declaratory judgment action to challenge the right of the City to collect license taxes as to their buildings as office buildings in addition to the license tax already paid on the buildings as apartment houses. The issue has been submitted as an agreed statement of facts, the essential parts of which are outlined above.

It is admitted that each of the buildings in question contain more than three dwelling units and that each building also contains more than 2,500 square feet of space devoted to office space.

It is the contention of the plaintiffs, however, that the Code was intended to provide for a tax based on the principal use to which a building was put and not a tax on each use. Plaintiffs say the buildings are clearly apartment houses containing quite incidentally a few offices which take up a small percentage of the space. They say the license tax is directed at "office buildings" and not merely at office space contained in buildings primarily devoted to other purposes. Under the circumstances it is contended that the license tax for "office buildings" is not properly applicable.

The City contends on the other hand that the buildings in question are both apartment buildings and office buildings and taxable in each category just as a building containing both a hotel and a theatre would be subject to both the hotel and the theatre tax.

The owners cite two zoning cases from other jurisdictions where courts attempted to interpret the meaning of references to offices or office buildings under the applicable zoning statutes. The owners also rely on a Workmen's Compensation case where a worker injured by a store elevator was not deemed to have been working on an office building elevator even though there was a disconnected office on the second floor of the store. See F. W. Woolworth Co. v. Davis, 41 F.2d 342 (10th Cir., 1930). These cases do not help in the interpretation of the language and intent of the Wilmington Tax Code dealing with licenses.

If it is apparent that if the intent of the taxing ordinance is to impose a tax on all buildings containing three or more apartment units and also to impose a tax on all buildings in which more than 2,500 square feet is used for office space, then a building falling within both categories is clearly subject to both taxes. Under such circumstances the principal use to which the building is put would not be material in determining the amount of license tax due. If the building also contained a store, a beauty shop and a dance studio, all operated by the owner of the building, additional license taxes would probably be due for each use without regard to the principal use of the building. There is much precedent both here and elsewhere for this form of taxation.

It is also apparent, however, that if the Code demonstrates by its terms that it was intended to impose a tax only on the principal use of a particular building, then there would be no authority to go beyond that

intent. In particular, if the term "office buildings" as used in the Code, refers only to buildings principally devoted to office use, then the office building license tax would not apply to the apartment buildings in question.

The owners concede that they maintain dwelling units within the meaning of the City Code and they have been purchasing the dwelling unit license for many years. The plaintiffs contends that since the building is a licensed apartment building it cannot also be an "office building" within the meaning of the Code. I find no support for this contention in the wording of the Code.

Listed in the Code are dozens of occupations and businesses but there is no indication that one engaged in more than one of the businesses listed need only obtain a license as to his principal business. There is nothing to indicate that an apartment building cannot also be an office building and be taxed as an office building provided it contains at least 2,500 square feet of office space.

Indeed, the listing of the many businesses without also providing that a single license fee will be deemed adequate as to any one location indicates an intent to tax each such business even if the various businesses are owned by the same corporation and carried on under the same roof.

It is also contended that the City is seeking to impose a double tax on a single business and that such tax is unconstitutional.

The rule as to this point has been stated as follows:

"As a general rule, at least where double taxation is prohibited, one license or occupation tax only may be imposed by the same branch of the government, at the same time, on a person who pursues but one business or avocation, and, when a license tax to do a general business has been exacted, another license tax may not be imposed for the doing of a particular act or series of acts constituting an integral part of such business." 53 C.J.S. Licenses § 24(1), p. 550.

And " * * * according to the explicit holdings of some cases and the statement of others, where a municipality is simply given the power to impose a license tax on a business, it cannot divide such business into its constituent elements, parts, or incidents, and levy a separate tax on each or any element, part or incident thereof." 38 Am.Jur. Municipal Corporations § 345, p. 34.

In the case of Rieck-McJunkin Dairy Co., 156 Pa.Super. 9, 39 A.2d 259 (1944) a municipality acting under a limitation of its taxing authority to a tax of not more than $100 per business was not permitted to require both a retailer's and a wholesaler's license from a single business even though the business was doing both retail and wholesale selling. But compare the cases cited by the City which come to an opposite conclusion under similar facts. Mobile v. Phillips, 146 Ala. 158, 40 So. 826 (1906); Chicago v. Efantis, 339 Ill. 55, 170 N.E. 766 (1930); Rosenbaum v. Newbern, 118 N.C. 83, 24 S.E. 1 (1896) and District of Columbia v. Pearson, 50 App.D.C. 303, 271 F. 377 (1921).

The authorities cited by the owners find no application to the case before the Court. It is, of course, true that the application of some license statutes may be so unfair and inequitable as to be outside the statutory or even the constitutional requirements applicable to taxing.

For example, if the City sought to impose an apartment license tax with a rate based on the square footage of the entire building and then imposed an office building tax with the rate based on a measurement of the same square footage, and buildings used solely as apartments or solely as offices had no such duplication of taxes, a constitution problem would exist.

Here the apartment position of the buildings still have more than three dwelling units even if the offices are ignored and the office portions of the buildings still

contain more than 2,500 square feet without regard to the apartments. No discrimination is shown on account of the fact that these owners happen to have two taxable businesses in the same building.

The owners' contention that the City's proposed application of this Code would be unconstitutional is without merit.

The owners also rely on the administrative precedent going back for many years whereby the City collected the license fee from the buildings as apartments but made no effective attempt to collect an additional license fee based on the office space in the buildings. I have considered that precedent but it appears to be at most a precedent of inaction rather than a precedent representing a conscious decision or an administrative policy.

Mention is made in the briefs that the City will attempt to collect taxes and penalties for prior years. This issue is not properly before the Court in this case, but in view of the relatively modest amount of tax revenue involved and failure of the City to act in prior years, the Court is confident that a reasonable settlement of these issues can be worked out without further costly litigation.

A declaratory judgment is hereby entered declaring that the buildings in question are office buildings within the meaning of the license tax provisions of the applicable Code even though they are primarily apartment buildings and are also licensed as such. The buildings are subject to both license taxes.

It is so ordered.